TORREY *v.* TOLEDO PORTLAND CEMENT CO

1. CORPORATIONS—PROMOTERS—FIDUCIARY RELATION.
   Promoters of a corporation are fiduciaries as to stockholders and creditors.[1]

2. SAME—FRAUD—CONCEALMENT—REMEDIES.
   The strict good faith which is demanded of fiduciaries will render promoters liable to make good their false representations made to creditors or stockholders and to pay such damages as their concealment of material facts may have caused.

3. SAME—STOCK AND STOCKHOLDERS—UNPAID STOCK.
   Promoters who represented by prospectus to intending subscribers of stock that they had entered the corporation on

[1] As to the duties and liabilities of promoters to the corporation and its members, see note to *Yale Gas Stove Co.* v. *Wilcox* (Conn.), 25 L. R. A. 90.

the same footing, and that the money received from stock subscriptions should be used for corporate purposes, are liable to make good their false representations by paying in the amounts which were unpaid on stock issued to them without the payment of any money to the corporation, but upon other questionable consideration.

Appeal from Washtenaw; Kinne, J. Submitted June 11, 1909. (Docket No. 92.) Decided October 4, 1909.

Bill by Orlando L. Torrey and others against the Toledo Portland Cement Company, William Watts, Charles M. Cooley, Randall T. Van Valkenburg, and others for the appointment of a receiver of defendant corporation, for an accounting, and for general relief. From the decree rendered, complainants appeal. Reversed, and decree entered for complainants.

*A. F. & F. M. Freeman,* for complainants.

*A. J. Sawyer & Son* (*Shunk & Thompson* and *C. F. Watts,* of counsel), for defendant Watts.

*E. B. Norris,* for defendants Cooley and Van Valkenburg.

GRANT, J. Defendant Watts demurred to the bill of complaint in this case. His demurrer was overruled. He appealed to this court. The action of the court below was sustained, and the case remanded for the framing of issue and hearing upon the merits. 150 Mich. 86 (113 N. W. 580). The hearing has been had and the bill dismissed as to defendants Watts and Cooley, and a decree rendered against defendant Van Valkenburg for $7,600. Complainants have appealed.

To the statement of the case in the former opinion should be added that the bill alleged that in the annual report of the corporation it was stated "the amount of capital stock actually paid in in property is $90,000;" that this was false and a part of the fraudulent scheme to deceive those who might and who did subsequently subscribe,

otherwise the statement there made is a sufficient statement for this opinion. The allegations of the bill are in the main sustained by the proofs. The Michigan secretary and treasurer were only nominally such officers. An assistant secretary and assistant treasurer were elected in Toledo, and the entire duty of these offices were by resolution imposed upon them. There were indications of marl upon the lands described in the bill, and options from several owners of such lands were obtained by defendant Cooley through the advice of Van Valkenburg. The options were taken in the name of Cooley at a price of $1 each. These options covered 800 acres of land, and the price to be paid, if the lands were taken, was about $20,000. The right to take any portion thereof and to pay proportionately was secured by the options. These options were obtained for the purpose of forming a corporation to manufacture cement. They were subsequently assigned to three of the nine promoters and organizers. They (nine in number) met, organized the corporation with a capital stock of $500,000, issued as fully paid. Seven subscribed for 500 shares of stock each, and two for 750 shares each. The three paid nothing for the assignments by Cooley to them. The articles of association stated that $50,000 of the capital stock had been paid in at the date thereof, being 10 per cent. of the capital stock. The entire nine elected themselves directors, with defendant Watts as president. The directors, or some of them, advanced money sufficient to pay the State fee for filing the articles of incorporation. This money was subsequently refunded to them out of moneys received from the sale of stock thereafter sold to other parties. The promoters retained for themselves as paid-up stock 9,000 shares, of the par value of $90,000. The three who had an assignment of the options from Cooley, together with an option from himself for some land of his own, were to receive $35,000 in addition to their stock, when the title to the lands should be obtained. The rest of the stock was to be returned into the treasury as treasury stock and sold at par. Each of

the promoters selling any stock was to receive 10 per cent. thereof as a compensation for selling. Cooley claims that he was to receive his 500 shares for securing the options. The options were never assigned to the corporation, although there is evidence that they were present at one of the meetings of stockholders. The options were apparently ignored in finally obtaining the title to the lands purchased. In all 234½ acres were purchased at an expense of $9,880, and not all of this was covered by the options. A committee, of which defendant Watts was chairman, reported that the committee had rejected certain options and bought certain other pieces; that Rochford, Butler, and Van Valkenburg, the assignees of Cooley, have never assigned or delivered to the company an option given them by Cooley; and that they found in the company's archives certain options running not to the company, but nine of them to Charles M. Cooley, and one to Van Valkenburg, and all assigned to Rochford, Van Valkenburg and Butler. They further report that they had to go direct to the owners of these lands to purchase, as there was nothing to prevent the owners from denying any rights on the part of the company. Defendant Watts admits that he did not tell "anybody about this $90,000 stock matter. I didn't do it because I didn't want to. I didn't think it would make a favorable report."

Mr. Wehrle, the agent for the Arbuckle-Ryan Company, who contracted to sell the cement company a large amount of machinery, testified that Dr. Watts told him that—

"The $500,000 of stock was to be sold and was being sold, and at that time there was practically $200,000 of stock sold, and that the entire proceeds of the $500,000 of stock sold went into the plant, less a commission of 10 per cent. I asked him whether any promotion stock had been issued, and he said that not one dollar, nor would there be,—that the entire $500,000 would go into the plant."

In the prospectus issued by these promoters they stated:

"We have purchased 800 acres of land near Manchester, Washtenaw county, Mich. * * * The stock is all common. There is no preferred stock, as we consider one man's dollar as good as any other man's. Every dollar paid in for stock will be used to further the best interests of the company in buildings, equipments, operating expenses. * * * We have for sale a limited amount of stock, and each purchaser of stock will enter the company on the same footing as all other stockholders, as we have no preferred stock."

As soon as it became known that $90,000 of the stock had been retained by the original promoters and organizers without the payment of a dollar therefor, that in addition $35,000 was to be paid for the purchase of the land, and that none of the capital stock had been paid in except upon the basis of the value of the options, it became impossible to obtain further subscriptions. The directors sought then to bond the company for a large amount of money, but it was impossible to float the bonds except for the small amount above stated.

We need not pursue further the transactions of these promoters and organizers, including the defendants, nor the efforts made to float the enterprise after it was launched. The judge found that—

"The relation of the so-called promoters or original stockholders towards all of the parties interested must be regarded as fiduciary."

He further held that—

"They may have been mistaken as to their legal rights and obligations; but I do not think they were dishonest or dishonorable in their plans and purposes. * * * If there was concealment or deception or fraud, such conduct would vitiate the whole transaction. The view which I have taken of this case does not render it necessary for me to pass decisively upon these questions."

The court entered a decree holding that—

"The office of secretary and treasurer of the company and the duties and functions of each were usurped by alleged assistants secretary and treasurer; that its books,

papers, accounts, credits, statements, assets, and funds were improperly and unlawfully kept away from the State of Michigan, and at Toledo, State of Ohio," and that the abuse of the defendant's corporate powers and such a violation of the law of its being operated as a forfeiture of its franchise, and appointed a receiver, and authorized the sale of the company's property.

The decree contains other provisions not necessary to mention.

The decision of the circuit judge as to Watts and Cooley is based upon the theory that they did not sell any of their stock; that they had not profited by the transaction; that the organization was upon the advice of counsel; and that they made honest efforts after the enterprise was launched to make it a success. It is manifest that, if these defendants and their co-promoters and organizers had stated truthfully the facts in regard to the actual condition of this corporation at its inception, it would have been impossible to obtain subscriptions from men of sanity. They not only did not inform the public of the real situation, but misled those with whom they dealt by concealing the facts. As soon as the real facts became known, subscriptions ceased and the enterprise collapsed.

We agree with the circuit judge that these promoters and organizers stood in a fiduciary relation to all subsequent subscribers having no knowledge of the facts, and to creditors with whom they dealt. As such fiduciaries, they are held to the strictest honesty and open dealing. It is immaterial whether they gained or lost by the transaction. It is sufficient to establish liability if those with whom they dealt in this fiduciary capacity have suffered loss by their concealment of facts or misrepresentation. That the complainants have suffered loss is established beyond controversy. Why is Van Valkenburg liable? He obtained money by selling the stock issued to him. Watts and Cooley retained their stock. The same rule applies to all three, and as well to the promoters who are not parties to this suit. The good intentions of the de-

fendants, their belief in the value of the property for which they had options, and in the ultimate success of the enterprise, their subsequent efforts, however strenuous, to obtain funds to make it a success, are wholly immaterial. Their liability is not measured by any or all of these things. If the assertions of honest belief of those dealing in "wildcat" transactions and in the affairs of "high finance" were allowed as a defense to their conduct, few could be held liable. These parties concealed, when they should have disclosed, the facts. They stated what was not true in their prospectus, issued for the purpose of obtaining subscribers to the stock. Watts not only concealed, but stated to the agent of the Arbuckle-Ryan Company what was not true. This was done for no other purpose than to induce the agent to make the contract. Such a transaction finds no approval in law or equity. Neither can defendant Watts sustain his nonliability on the ground that the $5,000 of stock was issued to him as compensation for his agreement to act as president for one year. He received the same amount as did the others. Defendant Cooley could as well maintain the issue of $5,000 to him on the ground of his obtaining the options; and the others might find some other fancied consideration for the issue of the stock to them. These nine parties were promoters and organizers, and were bound in good faith to state to those with whom they dealt the entire condition of the affairs of the company so far as their own connection with it was concerned. They induced others to buy stock at its par value, while they paid nothing, but some of them at least have profited by the transaction. Defendant Watts was paid in cash $600 as salary for president the second year. He sold stock on which he received commissions amounting to about $1,200. Cooley received a considerable amount of money for the sale of his land to the corporation—land substantially valueless for farming or other purposes. These promoters and organizers now seek to retain what they received, and to cast the entire loss and

debts of this corporation upon innocent stockholders who purchased upon the representations that all stockholders were on the same basis. If this transaction can be sustained, then, as is well said by the supreme court of Wisconsin:

"The well-settled doctrine that promoters cannot secretly obtain profits from the corporation they cause to be organized and launched into the business world without being responsible to it therefor can be easily evaded by their organizing the corporation, taking part of the stock ostensibly at the full par value thereof in cash, but really paying little or nothing therefor, and then inducing others to take the balance of the stock in ignorance of the facts, paying the full par value therefor into the corporate treasury." *Pietsch* v. *Milbrath*, 123 Wis. 647 (101 N. W. 388, 102 N. W. 342, 68 L. R. A. 948, 107 Am. St. Rep. 1017).

See, also, *Fred Macey Co.* v. *Macey*, 143 Mich. 138 (106 N. W. 722, 5 L. R. A. [N. S.] 1036); *Hinkley* v. *Pipe Line Co.*, 132 Iowa, 396 (107 N. W. 629, 119 Am. St. Rep. 564). These nine promoters and organizers attempted to acquire title to nearly one-fifth of the capital stock of this corporation without any real consideration, and without the payment of a single dollar in money. The law, justice, and equity require that they pay what other stockholders have been obliged to pay. The corporation is dead. The court has so decreed, and that its affairs be wound up.

The decree will be reversed and decree entered in accordance with this opinion, directing an accounting and a payment by the defendants of such amount as will place them upon the same basis as the other stockholders, and the case remanded for further proceedings. The complainants will recover the costs of both courts.

Blair, C. J., and Montgomery, Hooker, and Moore, JJ., concurred.