GOLDMAN v COHEN

Docket No. 59803. Submitted October 5, 1982, at Detroit.—Decided
February 10, 1983. Leave to appeal applied for.

Martin R. Goldman entered into an agreement with Elliot D.
Cohen and others whereby Goldman was to find a limited
partner who could contribute $300,000 to a nursing home
construction project. Goldman was to receive $50,000 of the
$300,000 for his services in locating the investor, who had to be
approved by the Department of Housing and Urban Develop-
ment in order for the investors to obtain a HUD mortgage for
the project. Goldman located a man interested in investing in
the project, but the man was rejected by HUD. The agreement
between Goldman and Cohen and the others was thereafter
rescinded by the investors, who substituted Mortimer Building
Company as the new partner at that time. Plaintiff filed suit
against Cohen, Mortimer Building Company, and the other
investors in Oakland Circuit Court claiming that the agree-
ment permitted him to substitute himself as the limited part-
ner and that defendants refused to permit him to do so. He
claimed, and the court, Robert L. Templin, J., agreed, that he
was entitled to specific performance of the contract. The court,
following a bench trial, awarded plaintiff specific performance
of the contract by ordering defendants to admit plaintiff as a
limited partner upon payment by plaintiff of $250,000. Further-
more, the $250,000 amount was reduced by $175,000 to compen-
sate plaintiff for the profits he would have received had defen-
dants admitted him to the partnership in a timely fashion.
Defendants appeal. *Held:*

1. The trial court erred in ruling that plaintiff was entitled to
the remedy of specific performance. The agreement created an
agency relationship between plaintiff and defendants, and

References for Points in Headnotes
[1] 5 Am Jur 2d, Appeal and Error §§ 702, 822.
[2, 3, 6, 8] 3 Am Jur 2d, Agency § 1.
[4, 7] 3 Am Jur 2d, Agency § 3.
   12 Am Jur 2d, Brokers §§ 1, 3.
[5] 3 Am Jur 2d, Agency § 2.
[9] 3 Am Jur 2d, Agency § 226 *et seq.*

plaintiff, as an agent, was not permitted to personally profit from the agency relationship except to the extent that he was specifically permitted to do so by the agreement or unless defendants expressly assented. Plaintiff's exclusive remedy, if any, was to bring an action at law to recover his commission.

2. The issue of whether any commission is in fact due to plaintiff is left for resolution on retrial.

3. Plaintiff was not acting as a real estate broker in conducting the transaction.

Reversed and remanded for a new trial.

1. APPEAL — EQUITY — *De Novo* REVIEW — FINDINGS OF FACT.

The findings of a circuit court granting an equitable remedy are reviewed *de novo* by the Court of Appeals, which must sustain the findings unless convinced, on review of the evidence, that it would have reached a contrary result.

2. WORDS AND PHRASES — AGENT.

An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal.

3. AGENCY — AGENT.

An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter and to render an account of it; one who is a substitute or deputy, appointed by the principal, with power to do the things which the principal may or can do.

4. WORDS AND PHRASES — AGENT.

The term "agent" includes factors, brokers, and every other relation in which one person acts for or represents another by his authority.

5. AGENCY — CREATION OF RELATIONSHIP.

Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts.

6. AGENCY — BUSINESS REPRESENTATIVE.

The characteristic of an agent is that he is a business representative whose function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons.

7. AGENCY — BROKERS.

A broker is an agent with special and limited authority who is employed by another to negotiate for specific property with the custody of which he has no concern.

8. AGENCY — FIDUCIARY RELATIONSHIP.

One occupying a confidential and fiduciary relation to another is held to the utmost fairness and honesty in dealing with the party to whom he stands in that relation and to act with the utmost good faith and loyalty to further the principal's interest.

9. AGENCY — SELF-DEALING — CONSENT OF PRINCIPAL.

An agent authorized to buy or sell for his principal cannot, except with the full knowledge and consent of his principal, buy or sell for himself; nor can he take advantage of the knowledge acquired of his principal's business to make profit for himself at his principal's expense.

*Hyman, Gurwin, Nachman, Friedman & Winkelman* (by *Irwin M. Alterman*), for plaintiff.

*Beier, Howlett, McConnell, Googasian & McCann* (by *Eric J. McCann*), for defendant.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

PER CURIAM. Defendants appeal as of right from a judgment in favor of plaintiff following a bench trial in which the trial court awarded plaintiff specific performance of a contract. The judgment ordered defendants to admit plaintiff, upon the payment of $250,000, as a limited partner in a partnership organized by defendants. It also provided that that amount was to be reduced by $175,000 to compensate plaintiff for the profits he would have received had defendants admitted him to the partnership in a timely fashion.

In 1974, defendants became interested in constructing a nursing home in Pasadena, Texas. The property was acquired and an application for a

Housing and Urban Development (HUD) mortgage was submitted. In 1975, a need and necessities certificate was issued by the State of Texas. However, defendants were unable to raise the additional financing they needed to put their plan into operation. Therefore, on the advice of their attorneys, they contacted plaintiff to arrange to find a limited partner who could contribute $300,000 to the venture. Of that amount, plaintiff was to receive $50,000 for his services.

Plaintiff obtained a person named Leroy Barnes who was willing to invest the necessary capital. Since HUD approval was required of all investors, defendants' agreement with plaintiff contained the following provision:

> "5. Mr. Barnes' participation in the partnership is subject to HUD approval. Immediately upon the execution of all pertinent douments, HUD will be so notified. In the event that Barnes is not approved by HUD you will have the right and the obligation to obtain a substitute limited partner(s) substantially on identical terms and conditions. You will be the sole judge of when to effect the substitution. If Mr. Barnes is substituted, Mr. Barnes will receive back all funds theretofore contributed by him to the Partnership together with interest at the rate of 15 percent per annum on such funds until repaid. The undersigned will personally bear the foregoing interest expense."

In April, 1977, HUD rejected Barnes as an investor. Plaintiff appealed that decision. However, in December, 1977, he withdrew the appeal when he learned that Barnes had been convicted of a drug offense earlier in December.

A dispute exists concerning when defendants notified plaintiff that they were rescinding the agreement. Defendants claim that, in November, 1977, they tendered to Barnes the funds he had

previously advanced to them, and substituted Mortimer Building Company as the new partner at that time. Plaintiff claims that the rescission occurred in January, 1978.

In any event, plaintiff claims that the agreement permitted him to substitute himself as the limited partner and that defendants refused to permit him to do so. He claimed, and the trial court agreed, that he was entitled to specific performance of the contract.

The remedy of specific performance is an equitable remedy. *Derosia v Austin,* 115 Mich App 647, 652; 321 NW2d 760 (1982). Therefore, our review is *de novo.* We sustain the findings of the trial court unless convinced, on review of the evidence, that we would have reached a contrary result. *Dehring v Northern Michigan Exploration Co, Inc,* 104 Mich App 300, 306; 304 NW2d 560 (1981). We are convinced that a contrary result should have been reached in this case.

Defendants contend, and we agree, that the agreement entered into between plaintiff and defendants did not give plaintiff a right to substitute himself in place of Barnes. In our opinion, the agreement created an agency relationship between plaintiff and defendants with plaintiff acting as agent on behalf of defendants for the purpose of securing an investor. The term "agent" was defined by the Supreme Court in *Stephenson v Golden,* 279 Mich 710, 734-735; 276 NW 849 (1937):

" 'An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal.' Bowstead on Agency (4th ed), 1.

" 'An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for

another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do.' 2 CJS 1025.

"The term 'agent' includes factors, brokers, etc. 2 CJS 1025.

"As said in *Saums v Parfet,* 270 Mich 165; 258 NW 235 (1935):

" ' "Agency" in its broadest sense includes every relation in which one person acts for or represents another by his authority' 2 CJ 419.

" ' "Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts." 21 RCL 819.

" ' "The characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons. To the proper performance of his functions, therefore, it is absolutely essential that there shall be third persons in contemplation between whom and the principal legal obligations are to be thus created, modified or otherwise affected by the acts of the agent." 1 Meechem on Agency (2d ed), 21.'

"A broker is an agent with special and limited authority, one who is employed by another to negotiate for specific property with the custody of which he has no concern. 9 CJ 508; 8 Am Jur 989." See *Maxman v Farmers Ins Exch,* 85 Mich App 115, 121; 270 NW2d 534 (1978).

In addition to requiring plaintiff to obtain an investor, the agreement entered into between plaintiff and defendants required plaintiff to obtain an alternate investor if Barnes was not acceptable to HUD. Furthermore, the agreement authorized plaintiff to bind defendants to accept an investor who met the conditions set forth in the agreement and who was acceptable to HUD. These provisions lead to the inescapable conclusion that plaintiff was employed to act on defendants' behalf and

that he was their agent. This conclusion is further supported by the definition of securities "agent" which is contained in the Uniform Securities Act. MCL 451.801(b); MSA 19.776(401)(b).

Having thus determined that plaintiff was employed as defendants' agent, it follows that he was not permitted to personally profit from the agency relationship except to the extent that he was specifically permitted to do so by the agreement, or unless defendants expressly assented. In *Golden, supra,* the Court stated the following:

" 'One occupying a confidential and fiduciary relation to another is held to the utmost fairness and honesty in dealing with the party to whom he stands in that relation. *Torrey v Toledo Portland Cement Co,* 158 Mich 348; 122 NW 614 (1909).' *Pikes Peak Co v Pfuntner, supra* [158 Mich 412; 123 NW 19 (1909)].

" ' "Except with the full knowledge and consent of his principal, an agent authorized to buy for his principal cannot buy of himself; an agent authorized to sell cannot sell to himself; an agent authorized to buy or sell for his principal cannot buy or sell for himself; nor can an agent take advantage of the knowledge acquired of his principal's business to make profit for himself at his principal's expense." ' " 279 Mich 736.

Since the agreement did not specifically authorize plaintiff to substittue himself for Barnes, we are compelled to conclude that the trial court erred in ruling that plaintiff was entitled to the remedy of specific performance. Plaintiff's exclusive remedy, if any, was to bring an action at law to recover his commission. *Laker v Soverinsky,* 318 Mich 100, 104; 27 NW2d 600 (1947). Whether any commission was in fact due is open to question in view of the uncontroverted evidence presented at trial that during the period plaintiff was purporting to act for defendants he also entered into an

agreement with Barnes whereby Barnes agreed to pay plaintiff $200,000 to act on his behalf in arranging for Barnes' participation in the partnership venture. Plaintiff admits that he failed to disclose his relationship with Barnes to defendants. However, this issue we find unnecessary to decide, instead leaving its resolution to the jury on retrial.

Defendants also claim that plaintiff was acting as a real estate broker in conducting this transaction and that he was barred from bringing this action by MCL 339.2501(a); MSA 18.425(2501)(a), which requires persons who negotiate the purchase or sale of a business or business opportunity to be licensed. We do not agree that plaintiff was engaged in the negotiation for the purchase or sale of a business or business opportunity within the meaning of the statute. He was only authorized to obtain an investor, not to effect a sale of the entire business. See *Hague v DeLong,* 292 Mich 262; 290 NW 403 (1940). Rather it appears that plaintiff was engaged in the sale of a security. See MCL 451.801(1); MSA 19.776(401)(1); *Prince v Heritage Oil Co,* 109 Mich App 189, 196; 311 NW2d 741 (1981).

In view of our disposition of the first issue, we find it unnecessary to address the remaining claims made by defendants.

The judgment of the trial court is reversed, and the case is remanded for a new trial. Costs to defendants.