EDIDIN v DETROIT ECONOMIC GROWTH CORPORATION

Docket No. 68783. Submitted February 15, 1984, at Detroit.—Decided
    May 15, 1984.

    Detroit Economic Growth Corporation (DEGC), one of the original
    financial backers of a renovation project known as Trappers
    Alley, in an effort to secure additional financing contacted a
    group of investors of which Gary Edidin was one. Edidin and
    Farbman/Stein & Company formed a partnership, Trappers
    Associates, to facilitate syndication of the project. Stonehaven
    Associates was a partnership consisting of Americal Develop-
    ment Corporation, owner of the project property, Stonehaven
    Enterprises, Inc., a wholly owned subsidiary of DEGC, and the
    City of Detroit. An agreement was executed by Edidin, Farb-
    man/Stein, Americal, the City of Detroit, and Stonehaven
    Enterprises whereby Edidin and Farbman/Stein would secure
    additional investors and, together with Stonehaven Associates,
    purchase the property. The agreement contemplated additional
    financing and changes in management as the project progressed
    and was contingent on obtaining a mortgage and extending
    lines of credit. DEGC immediately began obtaining loan exten-
    sions from its corporate lenders and also consulted with the
    United States Department of Housing and Urban Development
    about possible ways of incorporating an Urban Development
    Action Grant into the project. A HUD consultant advised
    DEGC that the project could not succeed unless financing in
    addition to that contemplated by the agreement were obtained.
    DEGC informed Edidin that conditions had changed and that
    the other parties to the agreement were awaiting a HUD
    review of the project. Edidin and Trappers Alley Associates, the
    limited partnership vehicle which was contemplated to syndi-
    cate the project but which was never formed, brought an action
    in the Wayne Circuit Court, against DEGC, Stonehaven Enter-
    prises, Americal, and Stonehaven Associates for damages for
    breach of the agreement and for negligent misrepresentation

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Summary Judgment §§ 26, 27.
[2] 71 Am Jur 2d, Specific Performance § 6.
[3] 71 Am Jur 2d, Specific Performance §§ 8, 30, 90.

and for specific performance. The court, Charles Kaufman, J., granted summary judgment on the count for specific performance, finding that the agreement was not a final agreement and had "too many executory things" to grant specific performance. Plaintiffs appealed. *Held:*

Specific performance will not be decreed where enforcement of the decree would require continuous judicial supervision, or where there is an adequate remedy at law; furthermore, the material terms of the agreement must be sufficiently certain so as to ensure that the court can proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed. The agreement in this case contemplated not simply an agreement to convey real estate, as plaintiffs contend, but an ongoing partnership between the parties. Both plaintiffs and defendants would have been involved in management of the project, both before and after construction was complete. To enforce a decree of specific performance would require continuous, long-term judicial supervision. To order the parties to engage in a cooperative venture of this nature could pose great difficulties for the circuit court. Also, the agreement presupposed future agreement on such particulars as the terms and conditions under which the managing agent of the project, Farbman/Stein, would be employed. Finally, plaintiffs advance no argument as to the inadequacy of their remedy at law. Indeed the amount of expenses incurred in reliance upon the May 11 agreement, and loss of income resulting from the alleged breach, should be readily ascertainable. The court properly granted summary judgment on this count.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — ISSUE OF MATE-RIAL FACT — COURT RULES.

A motion for summary judgment on the ground that there is no genuine issue as to any material fact tests whether there is factual support for a claim; the court will give the benefit of any reasonable doubt to the opposing party and must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome before granting a motion for summary judgment on that ground (GCR 1963, 117.2[3]).

2. SPECIFIC PERFORMANCE — REMEDIES.

The granting of specific performance lies within the discretion of the trial court, and whether or not it should be granted depends upon the particular circumstances of each case.

3. SPECIFIC PERFORMANCE — REMEDIES.

> Specific performance will not be decreed where enforcement of the decree would require continuous judicial supervision, or where there is an adequate remedy at law; furthermore, the material terms of the agreement must be sufficiently certain so as to ensure that the court can proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed.

*Schlussel, Lifton, Simon, Rands, Kaufman, Galvin & Jackier* (by *Joseph F. Galvin* and *Daniel D. Swanson*), for plaintiff.

*Honigman, Miller, Schwartz & Cohn* (by *Stephen Wasinger*), and *Nansi Rowe & Associates* (by *Clarise Larkins*), for defendants.

Before: ALLEN, P.J., and V. J. BRENNAN and N. J. KAUFMAN,* JJ.

PER CURIAM. This case arose from efforts to secure additional financing for a development project to renovate and lease five buildings in Detroit known as "Trappers Alley". Among the original financial backers of the project was defendant Detroit Economic Growth Corporation (DEGC). Seeking a method to attract additional funds for the financially troubled project, DEGC contacted a group of investors, including plaintiff Gary Edidin. Edidin and Farbman/Stein & Company formed a partnership known as "Trappers Associates"; plaintiffs concede that the proposed limited partnership to be known as "Trappers Alley Associates", the other plaintiff in this case, was never formed.

In a May 11, 1982, letter to defendant Stonehaven Associates (a partnership formed by defendant Americal Development Corporation, owner of the

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

property, defendant Stonehaven Enterprises, Inc., a wholly owned subsidiary of defendant DEGC, and the City of Detroit), Edidin and his partner, Farbman/Stein, agreed to secure additional investors for the project. Then, together with Stonehaven Associates, they would purchase the property and become owners and operators of the development project. The May 11 agreement also contemplated additional financing and changes in management as the project progressed and was made contingent on obtaining a mortgage and extending lines of credit.

DEGC immediately began obtaining loan extensions from its corporate lenders and also consulted with the United States Department of Housing and Urban Development about possible ways of incorporating an Urban Development Action Grant into the project. On June 14, 1982, a HUD consultant advised DEGC that the project could not succeed unless financing in addition to that contemplated by the May 11, 1982, agreement were obtained. On June 25, 1982, DEGC informed plaintiff Edidin that conditions had changed and that defendants were awaiting a HUD review of the project. Edidin immediately sent defendants a telegram that they had breached the agreement, and filed this action on October 14, 1982.

Plaintiffs' complaint included three counts for damages for breach of the May 11 agreement and for negligent misrepresentation. The fourth and final count alleged that plaintiff lacked "an adequate remedy at law since the Trappers Alley land, building and improvements were unique properties". Plaintiffs, therefore, prayed the court to order defendants to enter into a lease with plaintiffs and to transfer title to the property to plaintiffs.

Defendants moved for summary judgment on Count IV, the prayer for equitable relief, pursuant to GCR 1963, 117.2(3). Counsel for plaintiffs told the court that plaintiffs were seeking specific performance of the May 11 agreement. The court granted defendants' motion, finding that the May 11 agreement was not a final agreement which the court could order the parties to enter into and that the agreement contained "too many executory things" for the court to ever say it would consider granting specific performance of the agreement. The court noted that plaintiffs might be entitled to damages if they could prove that there actually was an agreement with defendants. From the trial court's order, plaintiffs appeal as of right.

Before addressing plaintiffs' concerns on appeal, we note that defendants' argument that this Court lacks jurisdiction to review the trial court's ruling is without merit. Defendants suggest that the trial court's partial order of summary judgment is not a final order, since Count IV is merely an alternative theory of recovery. However, the trial court expressly complied with the requirements of GCR 1963, 518.2 regarding motions for partial summary judgment and termed its partial summary judgment a final order. It is, therefore, proper for us to review the decision.

Plaintiffs attack the summary judgment on Count IV by saying that genuine issues of material fact still exist as to whether the agreement was final, whether contingencies had been fulfilled which made it capable of being specifically performed, and whether plaintiffs were the proper parties to request specific performance. The trial court had answered each of these in the negative.

Under GCR 1963, 117.2(3), a grant of summary judgment is proper only when there are no mate-

rial issues of fact and the trial court may determine as a matter of law the appropriate disposition of the claim. *Reeder v Hammond,* 125 Mich App 223, 227; 336 NW2d 3 (1983). The court should give the benefit of any reasonable doubt to the nonmoving party, and must be satisfied that no factual development is possible which would support the nonmoving party's claim. *Anderson v Kemper Ins Co,* 128 Mich App 249, 252; 340 NW2d 87 (1983).

In this case, even when the alleged factual issues are resolved in favor of plaintiffs, the trial court could still have properly concluded that, as a matter of law, plaintiffs were not entitled to specific performance of the May 11 agreement. This is because of the nature of specific performance.

Specific performance is an equitable remedy which may not be claimed as a matter of right. *Lamar v Detroit Apartments Corp,* 237 Mich 206, 213; 211 NW 643 (1927); *Goldman v Cohen,* 123 Mich App 224, 228; 333 NW2d 228 (1983). "Specific performance of contracts must always rest in the sound discretion of the court, to be decreed or not, as shall seem just and equitable under the peculiar circumstances of each case." *Waller v Lieberman,* 214 Mich 428, 443; 183 NW 235 (1921); *Derosia v Austin,* 115 Mich App 647, 652; 321 NW2d 760 (1982). This Court will "sustain the findings of the trial court unless convinced, on review of the evidence, that [it] would have reached a contrary result". *Goldman, supra,* p 228.

Specific performance will not be decreed where enforcement of the decree would require continuous judicial supervision, or where there is an adequate remedy at law. *Laker v Soverinsky,* 318 Mich 100, 104; 27 NW2d 600 (1947); *Goldman, supra,* p 230. Furthermore, the material terms of the agreement must be sufficiently certain so as to

ensure that the court can "proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed". *Czeizler v Radke,* 309 Mich 349, 358; 15 NW2d 665 (1944), citing *Blanchard v Detroit, L & L M R Co,* 31 Mich 43, 52-53 (1875).

The agreement in this case contemplated not simply an agreement to convey real estate, as plaintiffs contend, but an ongoing partnership between the parties. Both plaintiffs and defendants would have been involved in management of the project, both before and after construction was complete. To enforce a decree of specific performance would require continuous, long-term judicial supervision. To order the parties to engage in a cooperative venture of this nature could pose great difficulties for the circuit court.

Additionally, the May 11 agreement presupposed future agreement on such particulars as the terms and conditions under which the managing agent of the project, Farbman/Stein, would be employed. Specific performance would necessarily require resolution of these uncertainties, yet "the court will not make a contract for the parties or supply any material stipulation thereof". *Czeizler, supra,* p 358.

Finally, plaintiffs advance no argument as to the inadequacy of their remedy at law. Indeed, the amount of expenses incurred in reliance upon the May 11 agreement, and loss of income resulting from the alleged breach, should be readily ascertainable. *Cf. Ruegsegger v Bangor Twp Relief Drain,* 127 Mich App 28; 338 NW2d 410 (1983).

The trial court's grant of defendants' motion for summary judgment on plaintiffs' Count IV requesting specific performance is affirmed.

Costs to be assessed.