NELSON v CONSUMERS POWER COMPANY

Docket No. 123592. Submitted October 7, 1992, at Grand Rapids.
     Decided February 1, 1993, at 9:00 A.M.

     America E. Nelson brought an action in the Lake Circuit Court
     against Consumers Power Company, seeking damages for inju-
     ries allegedly sustained in a motor vehicle accident involving a
     Consumers Power vehicle. The attorneys for the parties agreed
     on a $20,000 settlement in favor of the plaintiff, and the
     plaintiff's attorney sent the defendant's attorney a letter con-
     firming the settlement. However, the plaintiff disavowed the
     proposed settlement, maintaining that she had not authorized
     it. Following a hearing requested by the defendant, the court,
     Richard I. Cooper, J., entered a judgment consistent with the
     proposed settlement, ruling that the defendant was entitled to
     rely on the apparent authority of the plaintiff's attorney to
     enter into a binding settlement agreement on behalf of the
     plaintiff. The plaintiff appealed.

     The Court of Appeals held:

     1. Generally, when a client hires an attorney and holds the
     attorney out as counsel representing the client in a matter, the
     client clothes the attorney with apparent authority to settle
     claims connected with the matter. Thus, a third party who
     reaches a settlement agreement with the attorney is entitled to
     enforcement of the settlement agreement even if the attorney
     was acting contrary to the client's express instructions. In such
     a situation, the client's remedy is to sue the attorney for
     professional malpractice. The third party may rely on the
     attorney's apparent authority unless the third party has reason
     to believe that the attorney has no authority to negotiate a
     settlement.

     2. Additionally, pursuant to MCR 2.507(H), an agreement
     between counsel to settle a case, subsequently denied by either
     party, is not binding under principles of apparent authority
     unless the settlement was made in open court, or unless evi-

REFERENCES
Am Jur 2d, Attorneys at Law § 156.
Authority of attorney to compromise action—modern cases. 90
     ALR4th 326.

dence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

Affirmed.

NEFF, J., concurring in the result, stated that MCR 2.507(H) provides all the necessary authority to enforce the agreement and that it was unnecessary to pronounce a new rule of law with respect to an attorney's apparent authority to settle an action.

1. ATTORNEY AND CLIENT — COMPROMISE AND SETTLEMENT — AUTHORITY TO SETTLE.

An attorney hired by a client to provide representation in an action is clothed with apparent authority to settle claims connected with the action; a third party who reaches a settlement agreement with the attorney is entitled to enforcement of the agreement, even if the attorney was acting contrary to the client's express instructions, unless the third party has reason to believe that the attorney has no authority to negotiate a settlement.

2. COMPROMISE AND SETTLEMENT — ATTORNEY AND CLIENT — SETTLEMENT AGREEMENTS.

An agreement between counsel to settle a case, subsequently denied by either party, is not binding under principles of apparent authority unless the settlement was made in open court, or unless evidence of the agreement is in writing subscribed by the party against whom the agreement is offered or by that party's attorney. (MCR 2.507[H]).

*Frederick G. Mather,* for the plaintiff.

*James W. Dempsey,* for the defendant.

Before: GRIFFIN, P.J., and NEFF and CORRIGAN, JJ.

GRIFFIN, P.J. This case presents the surprisingly novel issue whether an attorney, acting solely in the interest of a client and without any improper motives, has the apparent authority to settle a lawsuit on behalf of the client. We hold that attorneys do possess such authority and, accordingly, affirm the judgment of the circuit court.

I

On June 6, 1988, plaintiff, America E. Nelson, M.D., filed suit against defendant, Consumers Power Company, to recover damages for injuries she allegedly sustained in a motor vehicle accident involving a Consumers Power vehicle. Although plaintiff filed her initial complaint in properia persona, she was later represented by attorney J. Martin Bartnick, who filed an amended complaint on her behalf.

After the case was mediated and shortly before the scheduled trial date, an agreement was reached between Bartnick and counsel for the defendant to settle the lawsuit for $20,000. A dispute then arose between plaintiff and Bartnick concerning whether Bartnick had plaintiff's authority to accept the $20,000 settlement. On September 12, 1989, the trial court conducted a hearing on defendant's motion to enforce the settlement. At this hearing, Bartnick stated that plaintiff specifically told him that she would accept the $20,000 settlement. In contrast, plaintiff represented that her acceptance was expressly conditioned on her receiving a favorable magnetic resonance imaging (MRI) report regarding her left knee.

Following the hearing, the trial court took the matter under advisement and later issued a written opinion. Although the trial court acknowledged the factual dispute between plaintiff and Bartnick with regard to the issue of Bartnick's authority, the court did not resolve this factual dispute. Instead, the circuit court ruled that defense counsel was entitled to rely on Bartnick's representations that the $20,000 offer was acceptable to his client. In pertinent part, the circuit court observed:

Although a dispute may exist between plaintiff and her attorney whether she did or did not accept the offer of $25,000.00 [sic] described to her over the phone, defense is correct when it argues it may properly rely upon a communication received from plaintiff's attorney that its settlement offer has been accepted. It is clear that the negotiations continued after the original trial date was adjourned for May, 1989. Further, it is clear that mediation was held and that defendant accepted the mediation determination. Further, it is clear that defense made timely additional offers both after mediation as well as in a timely manner prior to the adjourned trial date scheduled for August 2, 3, and 4, 1989. It would be manifestly unfair to defense to now not enforce the settlement agreement when defense has participated in a timely manner throughout the proceedings. Conversely, there is ample testimony that defense did not receive timely cooperation from plaintiff. For example important discovery matters such as interrogatories were not complied with by plaintiff. Further, there is no showing that defense was not ready to proceed with trial on August 2, 3, and 4, 1989. The Court is satisfied that defense justifiably relied upon plaintiff attorney's telephone and written communications that the offer by defense for $20,000.00 was accepted.

On this basis, the trial court ruled that the settlement was enforceable. Accordingly, the trial court entered judgment against defendant in the amount of $20,000.

II

The general rule in Michigan is that an attorney has no authority by virtue of his general retainer to settle a lawsuit on behalf of a client. This rule and the litany of cases that support it were summarized recently by this Court in *Bigger v Cadillac*

*Malleable Iron Co,* 156 Mich App 747, 750-751; 402 NW2d 87 (1986):

The authority of an attorney to compromise a case on behalf of his client was discussed by this Court in *Coates v Drake,* 131 Mich App 687, 691-692; 346 NW2d 858 (1984):

"'The circuit court denied plaintiffs' motion by determining that *Henderson v Great Atlantic & Pacific Tea Co,* 374 Mich 142; 132 NW2d 75 (1965), was inapplicable to the instant case. The Supreme Court in *Henderson, supra,* held that a settlement of the plaintiff's claim, entered into by the plaintiff's attorney without the plaintiff's authorization and the proceeds of which the attorney converted to his own use, was not binding on the plaintiff and did not bar her suit against the defendant, even though the defendant entered into the settlement in good faith and was innocent of any wrongdoing. In so holding, the Court explained:

" 'The principle which governs this case is set forth in 66 ALR 107 *et seq.,* as supplemented in 30 ALR2d 944 *et seq.,* as follows:

" ' "The almost unanimous rule, laid down by the courts of the United States, both Federal and State, is that an attorney at law has no power, by virtue of his general retainer, to compromise his client's cause of action; but that precedent special authority or subsequent ratification is necessary to make such a comrpomise [sic] valid and binding on the cleint [sic]." ' (Citing numerous cases.)

" 'The above rule has been adhered to in Michigan in *Eaton v Knowles,* 61 Mich App 625 [28 NW 740 (1886)]; *Fetz v Leyendecker,* 157 Mich 355 [122 NW 100 (1909)]; *Peoples State Bank v Bloch,* 249 Mich 99 [227 NW 788 (1929)]; and most recently in *Wells v United Savings Bank of Tecumseh,* 286 Mich 619 [282 NW 844 (1938)].' [374 Mich 147.]

"See also *Michigan Nat'l Bank of Detroit v Patmon,* 119 Mich App 772, 775; 327 NW2d 355 (1982); *Presnell v Wayne Bd of County Road Comm'rs,* 105 Mich App 362, 365; 306 NW2d 516 (1981)."

In the present case, plaintiff submits that defendant failed to offer sufficient proofs below to support a finding that Bartnick had the actual authority to accept the $20,000 settlement. At first blush, we find it difficult to quarrel with this assessment of the record. As noted above, the trial court made no specific factual finding with regard to whether plaintiff actually agreed to the settlement negotiated by her attorney. Furthermore, it is difficult to see how the court could have made such a finding because no sworn testimony was taken at the hearing. The court merely had before it the conflicting representations of plaintiff and her attorney with respect to what was said between the two regarding the authority to settle.

This unresolved factual dispute, however, is simply not dispositive of the issue before us. Defendant argues, as it did successfully below, that it was entitled to rely on the apparent authority of Bartnick to enter into a binding settlement agreement on behalf of his client. After reviewing the relevant authorities, we are constrained to agree with defendant's argument.

To support its position, defendant relies primarily on the decision of the United States Court of Appeals for the Sixth Circuit in *Capital Dredge & Dock Corp v Detroit*, 800 F2d 525 (CA 6, 1986). That case involved extensive litigation that ensued following a construction accident in which an underwater tunnel exploded. The plaintiff's attorney, contrary to the express authority granted to him by his client, executed a release of liability that effectively extinguished certain claims against the City of Detroit. In its original opinion, the court relied on principles of apparent authority and held that the plaintiff was bound by the unauthorized actions of its attorney. Noting that the issue was one of first impression in Michigan, the court

concluded that Michigan would adopt a general rule of apparent authority applicable in the context of settlement negotiations. In pertinent part, the court reasoned:

> The courts of Michigan have evidently not specifically addressed the apparent authority question in the attorney-client context. In *Michigan National Bank v Kellam,* [107 Mich App 669; 309 NW2d 700 (1981)], the Michigan Court of Appeals held that an attorney had no apparent authority to bind a partnership (whose partnership agreement the attorney had written) in dealings with third parties. However, the court noted that the attorney worked for one of the partners individually and was not hired by the partnership to handle the matter that the third parties presented. In *Wells v United Savings Bank,* 286 Mich 619; 282 NW 844 (1938), and *Peoples State Bank v Bloch,* 249 Mich 99; 227 NW 778 (1929), the Michigan Supreme Court held that an attorney has no *implied* authority to settle or compromise a matter, but the court did not reach the question of *apparent* authority. We believe that Michigan courts would adopt the general rule stated above on apparent authority arising from the attorney-client relationship; in the absence of Michigan precedent to the contrary, we will apply this rule. [*Id.* at 531. Emphasis in original.]

Following this ruling, the plaintiff in *Capital Dredge* filed a motion for rehearing, arguing that this Court's decisions in *Coates, supra,* and *Michigan Nat'l Bank of Detroit v Patmon, supra,* "rejected any notions of apparent or implied authority being sufficient to bind a client to a settlement." *Capital Dredge, supra* at 532. Once again, the Sixth Circuit Court of Appeals disagreed. In an extensive analysis, the court reaffirmed its original conclusion that the Michigan courts would not preclude applying a rule of apparent authority in

the settlement context. Specifically, the court reasoned:

> The holdings of *Henderson, Patmon,* and *Coates* do not contradict the general rule on apparent authority stated in our earlier opinion. In general agency terms, these cases hold that an attorney does not generally have *implied* authority to compromise the client's claim. The Michigan courts have refused to find that a client implicitly authorizes his attorney to settle his claim when the client employes [sic] the attorney. Having rejected the notion of implied authority in this context, the courts require the client's express authorization to settle. The cases do not, however, deal with the question of a lawyer's *apparent* authority to settle a claim. The most that can be said of these cases is that their silence on the question of apparent authority might tend to support an inference that the Michigan courts would not adhere to the majority rule on apparent authority.
>
> As noted in our earlier opinion, however, rejection of the general rule on apparent authority would result in an unworkable situation:
>
> "[P]rudent litigants could not rely on opposing counsel's representation of authorization to settle. Fear of a later claim that counsel lacked authority to settle would require litigants to go behind counsel to the opposing party in order to verify authorization for every settlement offer." [*Id.* at 532. Emphasis in original.][1]

Suffice it to say, we find the opinion in *Capital Dredge* to be both well-reasoned and highly persuasive. Accordingly, quoting from *Capital Dredge, supra* at 530-531, we hold as follows:

> Generally, when a client hires an attorney and

---

[1] For a general discussion of the distinction between implied and apparent authority see *Meretta v Peach,* 195 Mich App 675; 491 NW2d 278 (1992).

holds him out as counsel representing him in a matter, the client clothes the attorney with apparent authority to settle claims connected with the matter. See *Terrain Enterprises, Inc v Western Casualty & Surety Co*, 774 F2d 1320 (CA 5, 1985); *Bergstrom v Sears, Roebuck & Co*, 532 F Supp 923 (D Minn, 1982); *Walker v Stephens*, 3 Ark App 205; 626 SW2d 200 (1981); *Hutzler v Hertz Corp*, 39 NY2d 209; 383 NYS2d 266; 347 NE2d 627 (1976); cf. *Sustrik v Jones & Laughlin Steel Corp*, 189 Pa Super 47; 149 A2d 498 (1959); *Rader v Campbell*, 134 W Va 485; 61 SE2d 228 (1949). But see *Blanton v Womancare, Inc*, 38 Cal 3d 396; 696 P2d 645; 212 Cal Rptr 151 (1985). Thus, a third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting contrary to the client's express instructions. In such a situation, the client's remedy is to sue his attorney for professional malpractice. The third party may rely on the attorney's apparent authority unless he has reason to believe that the attorney has no authority to negotiate a settlement.

Additionally, we hold that pursuant to MCR 2.507(H), an agreement between counsel to settle a case, subsequently denied by either party, is not binding under principles of apparent authority unless the settlement was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.[2]

---

[2] MCR 2.507(H) provides:

An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

III

Applying these principles to the present case, we find no reason to disturb the decision of the circuit court enforcing the settlement agreement. It is not disputed that Bartnick was proceeding to negotiate this case on his client's behalf and that there exists a writing satisfying the requirements of MCR 2.507(H). The only dispute concerns whether Bartnick was authorized by his client to accept the $20,000 settlement. Because we conclude that defense counsel was entitled to rely on Bartnick's apparent authority, we affirm the judgment of the circuit court.

Affirmed.

CORRIGAN, J., concurred.

NEFF, J. *(concurring).* I concur in the result reached by the majority, but write separately to express my belief that MCR 2.507(H) controls and provides all the necessary authority to enforce the settlement agreement in this case without disturbing well-established precedent and without unnecessarily inviting additional litigation.

The majority opinion adopts the reasoning of *Capital Dredge & Dock Corp v Detroit,* 800 F2d 525 (CA 6, 1986), and creates a new rule of law recognizing apparent authority of an attorney to bind a client in the context of settlement negotiations. The dissent in *Capital Dredge* points out strong Michigan precedent that "raise[s] a substan-

---

This rule has been described as essentially a statute of frauds provision applicable to legal proceedings. 3 Martin, Dean & Webster, Michigan Court Rules Practice, p 125. We have held that the rule applies to settlement agreements, see *Metropolitan Life Ins Co v Goolsby,* 165 Mich App 126, 128; 418 NW2d 700 (1987), and we conclude that it has been satisfied in this case. The record contains a letter to defense counsel signed by Bartnick confirming the $20,000 settlement.

tial question whether Michigan will follow the general rule allowing an attorney clothed in only apparent authority to compromise his client's claim." *Id.*, p 534. In my view, it is unnecessary to reach the issue of apparent authority in this case.

The majority opinion states that there is an unresolved factual dispute between plaintiff and her attorney with regard to the attorney's authority to settle, but concludes that the unresolved factual dispute is not dispositive of the issue before us. In my view, resolution of this factual dispute is certainly dispositive of this case. In addition, my review of the record reveals that the trial court adequately, though perhaps not artfully, resolved this dispute and, in effect, determined that plaintiff's attorney had the actual authority to settle the case and that plaintiff merely had a change of heart. As noted in the majority opinion, at the hearing on defendant's motion to enforce the settlement, the trial court took no sworn testimony, but conducted a transcribed proceeding where it entertained the representations of plaintiff and both attorneys with regard to the events that occurred leading up to the settlement agreement and what was said between plaintiff and her attorney regarding the authority to settle. The trial court later entered a written opinion that details the dispute between plaintiff and her attorney, but then resolved the dispute by finding that plaintiff had a "change of heart."[1] This finding is not clearly erroneous.

---

[1] The trial court's written opinion states in pertinent part:

The case *Thomas v Michigan Mutual Insurance Co* [138 Mich App 117; 358 NW2d 902 (1989)], provides controlling case law to the effect that defendant's Motion to Enforce Settlement Agreement is granted. Although a dispute may exist between Plaintiff and her attorney whether she did or did not accept the offer of $25,000.00 [sic] described to her over the phone, defense is correct when it argues it may properly rely upon a communication received from Plaintiff's attorney that its settlement

Because I do not believe it necessary to create a
new rule of law, one that is not supported by prior
authority, I concur only with that portion of the
majority opinion that relies on MCR 2.507(H) to
conclude that a binding settlement agreement was
reached between the parties. Litigants are not free
to disregard a settlement agreement entered pur-
suant to this court rule in the absence of satisfac-
tory evidence of mistake, fraud, or unconscionable
advantage. *Groulx v Carlson,* 176 Mich App 484,
489, 492; 440 NW2d 644 (1989). There is no satis-
factory evidence of mistake, fraud, or unconsciona-
ble advantage on the record before us and there-
fore no impediment to affirming the judgment of
the trial court solely on the basis of MCR 2.507(H).

offer has been accepted. . . . The Court is satisfied that defense
justifiably relied upon Plaintiff Attorney's telephone and writ-
ten communications that the offer by defense for $20,000.00
was accepted. The facts in our present case are substantially
similar to that in *Thomas,* supra, in that one attorney commu-
nicated to the other that its offer was accepted. Further, the
Court does not find that any fraud, duress, or misrepresenta-
tion *by Defendant* is alleged. America E. Nelson, M.D. states
that she was concerned that additional medical testimony
would show that her left knee also was suffering injury. How-
ever there is no showing that this concern was communicated
to defense or even that this concern was communicated in
writing to her own attorney or in some other way a verification
that Attorney Bartnick understood that she was "condition-
ally" accepting the offer. This aspect remains a dispute between
Plaintiff and her attorney as to whether she in fact orally told
him that she had "conditional" concerns about her left knee.
This allegation by Plaintiff is somewhat questioned in that
during oral arguments on September 23, 1989 she expressed
noteable [sic] "upset" in that her insurance attorney entered
into a settlement with another plaintiff's attorney involving an
alleged dog attack by America E. Nelson's dog against that
plaintiff wherein the plaintiff received a settlement amount
over $70,000.00. America E. Nelson, M.D. argued that if that
settlement was entered for that amount, that she would be
entitled to a similar settlement in the Consumers Power Com-
pany matter. As in *Thomas,* supra, this focus by America E.
Nelson, M.D. is strongly indicative of a "change of heart"
similar to what was found in the *Thomas* case.