## CITY OF AUBURN v BROWN

1. CONTRACTS—IMPLIED CONTRACTS—IMPLIED IN FACT—IMPLIED IN LAW—MEETING OF MINDS—FICTION OF LAW.

   There are two kinds of implied contracts: one implied in fact, and the other implied in law; the first does not exist unless the minds of the parties meet by reason of words or conduct; the second is quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law to enable justice to be accomplished even in case no contract was intended.

2. PLEADING—COMPLAINT—NOTICE OF CLAIM.

   The purpose of the complaint and the primary function of all pleadings is to give notice of the nature of the claim sufficient to permit the opposite party to take a responsive position.

3. PLEADING—CONTRACTS—IMPLIED CONTRACTS—IMPLIED IN FACT—IMPLIED IN LAW.

   A plaintiff adequately presented a cause of action based on a contract implied in fact, although the claim was inaccurately denominated as based on a contract implied in law, where the facts alleged by plaintiff informed defendants of the implied-in-fact contract claim, the claim was amplified and explained at a pretrial conference and at trial, the facts upon which plaintiff intended to rely were well-known to defendants, and defendants suffered no detriment.

4. CONTRACTS—IMPLIED CONTRACTS—IMPLIED IN FACT—CONDUCT OF PARTIES—IMPLICATION.

   A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction; the

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4, 6] 17 Am Jur 2d, Contracts § 3.
[2] 61 Am Jur 2d, Pleading § 96.
[5] 17 Am Jur 2d, Contracts § 390.

test of an implied contract is whether if services were performed under circumstances fairly raising a presumption that the parties understood and intended that the services should be paid for, or at least that reasonable men in like situation as those who received and are benefited by the services naturally would and ought to understand and expect compensation was to be paid.

5. Contracts—Offeree—Duty to Speak—Duty to Act—Silence— Operation of Law.

The silence and inaction of an offeree can give rise to a contract by operation of law where the circumstances impose a duty to speak or act.

6. Contracts—Implied Contracts—Implied in Fact—Highways— Preliminary Improvements—Municipal Corporations—Evidence.

The existence of a contract for preliminary improvements to certain roads prior to the installation of curbs and gutters was a question properly submitted for jury determination where the evidence showed that defendants were aware that a street improvement program had been adopted by the plaintiff city, that property owners were to provide the preliminary work before the program could be completed, and that they could exempt their property from the program if they chose, and defendants did nothing but allow the costly improvements to be made.

Appeal from Bay, John X. Theiler, J. Submitted Division 3 March 12, 1975, at Lansing. (Docket No. 19540.) Decided April 8, 1975.

Complaint by the City of Auburn against Frank S. Brown and Leona M. Brown to recover expenses for preliminary improvements to certain roads made pursuant to a street improvement program. Judgment for plaintiff. Defendants appeal. Affirmed.

*Joel H. Kahn,* for plaintiff.

*Higgs, Higgs & Darbee,* for defendants.

Before: Danhof, P. J., and D. E. Holbrook, Jr. and O'Hara,* JJ.

Danhof, P. J. The plaintiff city brought an action to recover for expenses incurred under a street improvement program from the defendants, abutting property owners. The jury returned a verdict in favor of the plaintiff city in the amount of $8,375.63 against both defendants. Judgment was entered on the verdict, and defendants appeal. We affirm.

On April 22, 1969, the Auburn City Commission, of which defendant Frank Brown was a member after having previously been mayor, adopted a resolution creating a special street improvement program. Under this program, all streets in the city were to be brought up to certain standard specifications, and gutter and curbs were to be installed at an assessed rate of $7 per ft. Because the various streets in the city were at differing levels of development, the program provided that property owners in new subdivisions were to furnish excavation, sand back-fill, and gravel topping at their own expense. This was to make these roads comparable to the other streets in the city before the newer roads could benefit from the gutter and curb project.[1] Property owners were

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Defendants suggest on appeal, as they did in the trial court in the form of a motion for a directed verdict, that the excavation, sand back-fill, and gravel topping was to be included in the benefits conferred as part of the special assessment. Although they chose not to directly raise this contention as an issue on appeal, examination of the record and transcripts discloses that it was not the intention of the city commission to include the excavation, sand back-fill and gravel when they adopted the special assessment. The special assessment resolution of April 22, 1969 makes no reference to the excavation, sand back-fill and gravel topping. These requirements were established as part of the street specifications at commission meetings held on July 15, 1968 and June 5, 1969. The commission voted

given the option of withdrawing their streets from the program; and at least one property owner did elect not to participate. Some property owners did the necessary work themselves, others allowed the city's contractor to do it and made payment to the city. The defendants did nothing.

At a commission meeting held on March 17, 1969 to consider the taking of bids for the street improvement program, a letter from an engineering firm retained by the city was discussed. The letter indicated that under the program, two streets located in the defendants' subdivision had to be brought up to the specifications at the owner's expense in order for the installation of gutters and curbs to proceed. The defendants made no effort to remove their property from the project, or to perform the necessary preparatory work themselves. At another commission meeting held on July 20, 1970 at which defendant Frank Brown was present, the other members of the commission voted to have the city's contractor complete the two streets and to bill the subdivider, defendant Frank Brown.

After some confusion occasioned by the failure of the contractor to include a sand back-fill, the two streets in the defendants' subdivision were completed in September, 1970. The excavation, sand back-fill, and gravel were furnished by the contractor, and paid for by the city. The defendants, however, refused to reimburse the city and this suit was instituted resulting in a judgment in favor of the plaintiff city.

At the conclusion of trial, the court instructed the jury and submitted the case on the theory of a

unanimously at a meeting on May 20, 1968 that the streets had to be completed before the curb and gutter project could start.

contract implied in fact. Defendants argue that this was error because this theory, as such, was never advanced by the plaintiff city in its pleadings nor during the course of the trial, but rather was raised by the trial court itself. Defendants concede that the plaintiff city had presented a claim, as clarified at the pretrial conference, based on the theory of a contract implied in law, but they argue that when the trial court granted their motion to dismiss that claim, it should not have allowed the case to proceed on the theory of a contract implied in fact. They do not claim that they were surprised or that they suffered any other prejudice as a consequence of the trial court's action.

To the extent that defendants' search for reversible error in the failure of the plaintiff city to accurately denominate its claim and its pleadings as based upon a "contract implied in fact" as opposed to a "contract implied in law", this contention is refuted by GCR 1963, 110.3 which provides in part:

"The form and sufficiency of all motions and pleadings shall be determined by these rules, construed and enforced to secure a just, speedy, and inexpensive determination of all controversies on their merits."

The comments on this rule in 1 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), p 178, have been quoted with approval in *Seaboard Finance Co v Barnes,* 378 Mich 627, 632; 148 NW2d 756 (1967):

"Emphasis is placed upon the presentation of facts which state a cause of action, and upon giving reasonable notice of the nature of the cause pleaded, rather

than on pleading the claim to fit one of the forms of action."

Defendants are correct in their insistence that a significant distinction exists between a contract implied in law and a contract implied in fact. This distinction was expressed in *Cascaden v Magryta,* 247 Mich 267, 270; 225 NW 511 (1929), and quoted in *Detroit v Highland Park,* 326 Mich 78, 100; 39 NW2d 325 (1949):

"There are two kinds of implied contracts: one implied in fact, and the other implied in law. The first does not exist unless the minds of the parties meet, by reason of words or conduct. The second is *quasi* or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended."

Defendants are not correct, however, in asserting that the plaintiff city has not adequately presented a cause of action based on the theory of contract implied in fact.

The purpose of the complaint and the primary function of all pleadings is to give notice of the nature of the claim sufficient to permit the opposite party to take a responsive position. *Simonson v Michigan Life Insurance Co,* 37 Mich App 79, 83; 194 NW2d 446 (1971). "No pleading is insufficient, so far as facts are concerned, which serves this function." *Olson v Dahlen,* 3 Mich App 63, 71; 141 NW2d 702 (1966), *lv den,* 378 Mich 720 (1966). As was recently stated by Judge HOLBROOK in *Churchill v Palmer,* 57 Mich App 210, 216–217; 226 NW2d 60 (1974):

"Contemporarily, the policy is 'to dispose of cases according to their merits, rather than by applying technical rules formalistically to bar meritorious

claims.' *Crowther v Ross Chemical & Mfg Co,* 42 Mich App 426, 430; 202 NW2d 577, 580 (1972).

* * *

"This is consistent with GCR 1963, 111.1(1) which calls for a complaint to contain:

" 'a statement of the facts without repetition upon which the pleader relies in stating his cause of action *with* such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend, * * * ' (Emphasis supplied.)

"In *Rose v Wertheimer,* 11 Mich App 401, 405; 161 NW2d 406, 408 (1968), this writer stated, as concurred in by Judge R. B. BURNS of this panel:

" '[T]he rules and practice of pleading have been liberalized greatly pursuant to the equitable consideration that a person should be allowed his day in court if it appears reasonably certain that his pleadings set forth a justiciable question and that, taken in their entirety, they are reasonably adapted to inform the adverse party of the cause which he is called upon to contest.' "

In its amended complaint, plaintiff city alleged that defendants knew that under the provisions of the street improvement program property owners were to furnish the excavation, sand back-fill and gravel, and that knowing this, the defendants, acting through the agency of defendant Frank Brown as a member of the city commission, agreed to include their property in the program and accepted the improvements made under it, but have refused to pay for these improvements. The facts reasonably informed the defendants of the plaintiff city's implied contract claim. In addition, the claim was amplified and explained at the pretrial conference and during extended discussions between court and counsel during trial. The facts upon which the plaintiff city intended to rely were well-known to the defendants; they do not

contend that they were taken unaware by the developments at trial, and they suffered no detriment as a result of the course followed at trial. Although the distinction between a contract implied in fact and implied at law may not have been consistently maintained at trial, prejudicial error did not result. *In re Mazurkiewicz's Estate,* 328 Mich 120, 123; 43 NW2d 86 (1950). Therefore, the trial court properly ruled that the plaintiff city would not be prevented by any deficiency in the pleadings to proceed at trial on the theory of a contract implied in fact.

Defendants also raised a substantive objection to the submission of the contract implied-in-fact issue to the jury. As previously discussed, the amended complaint sufficiently disclosed the implied-in-fact contract theory of the plaintiff city, making an amendment of the pleadings at trial unnecessary. However, defendants assert that the evidence was insufficient to submit the plaintiff's theory to the jury even if properly pled. This assertion cannot be accepted.

The conditions which surround the creation of a contract implied in fact have recently been explained in *Erickson v Goodell Oil Co, Inc,* 384 Mich 207, 211–212; 180 NW2d 798 (1970):

"A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract. *In re Munro's Estate,* 296 Mich 80; 295 NW 567 (1941). A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. *Miller v Stevens,* 224 Mich 626; 195 NW 481 (1923). The existence of an implied contract, of

necessity turning on inferences drawn from given circumstances, usually involves a question of fact, unless no essential facts are in dispute."

The court concluded that, since a jury trial had been demanded, the question of fact should be submitted for the jury's determination.

In the present case, plaintiff city introduced evidence that the defendants were aware of the special street improvement program that had been adopted. They knew that the property owners were to provide the excavation, sand back-fill and gravel before the curb and gutter project could be completed. They knew that they could exempt their property if they chose. They did nothing but allow these costly improvements to be made to their land and they now enjoy the benefits without the expense borne by all other affected landowners.

The test of an implied contract is whether "services were performed under circumstances fairly raising a presumption that the parties understood and intended that they should be paid for, or at least that reasonable men in like situation as those who received and are benefited by the service naturally would and ought to understand and expect compensation was to be paid." *Daniels v Goodwin Pontiac Co,* 348 Mich 121, 127; 82 NW2d 444 (1957), quoting from *Spence v Sturgis Steel Go-Cart Co,* 217 Mich 147, 153; 186 NW 393 (1921). Further, it has been stated that: "In general contract law, under circumstances which impose a duty to speak or act, the silence and inaction of an offeree can give rise to a contract by operation of law." *Wadsworth v New York Life Insurance Co,* 349 Mich 240, 255; 84 NW2d 513 (1957). Under the evidence presented in this case, a question of fact

arose as to whether or not the defendants' silent acquiescence in the street improvement program, in view of these circumstances and particularly in light of defendant Frank Brown's position on the commission, fairly raised the presumption that the parties understood that payment would be made. This question was properly submitted to the jury.

Our decision on the first two issues also resolves the third issue raised by the defendants and further consideration of it is unnecessary.

Affirmed. Costs to the plaintiff.