*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

INTERNATIONAL UNION, SECURITY, POLICE
& FIRE PROFESSIONALS OF AMERICA,

UNPUBLISHED
March 16, 2023

Plaintiff-Appellee/Cross-Appellant,

v

No. 359846
Oakland Circuit Court
LC No. 2019-173125-CB

STEVE ANGELO MARITAS,

Defendant-Appellant/Cross-Appellee.

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Following a jury trial addressing damages, defendant Steven Angelo Maritas appeals as of right the judgment entered against him and in favor of plaintiff, International Union Security Police & Fire Professionals of America, in the amount of $500,241.40. Plaintiff cross-appeals, asserting that the trial court erred when it failed to grant its request for specific performance. We reject defendant's challenges raised in his appeal and affirm the judgment. On cross-appeal, we remand to the trial court for entry of a judgment granting specific performance.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff is an unincorporated international labor union. Defendant worked as plaintiff's organizing director for approximately 11 years, until plaintiff terminated his employment in February 2013. Two months after defendant's separation from plaintiff, plaintiff filed a lawsuit in the United States District Court for the Eastern District of Michigan alleging trademark infringement and breach of a non-compete agreement. In June 2013, counsel for the parties signed and submitted a stipulated order enforcing an agreement to settle that was also signed by the federal district court judge. In that stipulated order, the parties acknowledged that the settlement agreement included a prohibition against defendant using plaintiff's trademarks, including its name and acronym, SPFPA, and included a requirement that defendant transfer ownership and control of any social-media sites or accounts that contained plaintiff's name or acronym. Plaintiff attached this stipulated order, and the purported 2013 settlement agreement, to its complaint. Each document referenced the other. Of note, while the stipulated order contains signatures from both

-1-

plaintiff's and defendant's counsel, the attached 2013 settlement agreement did not contain any signatures. Importantly, the agreement contained a provision allowing the recovery of costs and attorney fees if a party was successful in seeking enforcement of the agreement.[1]

After recognizing that defendant continued to use plaintiff's name and acronym in various online activities, plaintiff filed the instant action, alleging two "counts" related to the breach of the 2013 agreement. In Count I, which sought money damages for breach of contract, plaintiff requested that the trial court "enter judgment in its favor and against Defendant for an amount in excess of $25,000, but less than $75,000, and award Plaintiff all costs and attorney fees and such other relief that this Court deems just." In Count III, plaintiff sought specific performance of the 2013 agreement.

Both parties moved for summary disposition. Plaintiff alleged that the 2013 settlement agreement was binding and that there was no dispute that defendant had breached it by using plaintiff's name on many social-media sites. In an amended response, defendant asserted that because plaintiff's signature was missing from the 2013 settlement agreement that was attached to the complaint, it was not enforceable under Michigan's statute of frauds, MCL 566.132. The trial court granted summary disposition in favor of plaintiff related to Count I—breach of the 2013 settlement agreement. The court determined that the lack of plaintiff's signature on the 2013 agreement was not dispositive because the 2013 stipulated order was signed by defendant's attorney and the order referenced that the parties had entered into a settlement agreement. The court concluded that the language of both documents, read together, supported "a finding of mutual assent of the parties to be bound by the 2013 Settlement Agreement." The court ruled that the 2013 stipulated order was "so connected" to the 2013 agreement and the signature on the order sufficed as a "note or memorandum of the agreement" thereby satisfying the statute of frauds. With regard to plaintiff's Count III, which sought specific performance of the 2013 agreement, the trial court granted summary disposition in favor of defendant because the court concluded that specific performance is an equitable remedy, not an independent cause of action. The court added, however, that the ruling did not preclude plaintiff "from seeking the remedy of specific performance on its breach of contract claims as provided by law." A jury trial was scheduled to determine damages, if any, for the sole remaining count related to defendant's breach of the 2013 agreement.

In anticipation of trial, plaintiff moved to preclude defendant from introducing any evidence that plaintiff had made disparaging remarks about defendant. It submitted that the evidence was not relevant because this lawsuit was strictly about defendant's breach of contract and not plaintiff's conduct. The trial court granted the motion.

A few days before the start of trial, a settlement conference was scheduled that required all parties attend. Although plaintiff's representative and its counsel appeared in person, defendant and his counsel did not appear at the appointed time. Defendant and his counsel incorrectly

---

[1] In 2014, after defendant purportedly violated the 2013 order and agreement, plaintiff filed another lawsuit against defendant in federal district court. This suit culminated with a 2016 settlement agreement. Although plaintiff also alleged a breach of that 2016 agreement in the instant case, that claim was voluntarily dismissed and is not at issue in this appeal.

thought that the hearing was to be held virtually. The trial court sanctioned defendant with a $5,000 fine for failing to appear at the settlement conference, payable to the court.

At trial, examples of the types of communications defendant made regarding plaintiff were introduced into evidence. They included claims that plaintiff's president, David Hickey, slept in the same bed "with his youngest daughter with only a sheet between them," that plaintiff was generally corrupt, that plaintiff's officers have engaged in embezzlement, and that plaintiff was filled with "rats." In addition to attorney fees, costs, and interest, the only damages plaintiff sought were in relation to the time that Dwayne Phillips, who took over as plaintiff's National Organizing Director after defendant's employment with plaintiff ended, spent addressing defendant's derogatory statements about plaintiff. Phillips explained that he would monitor the numerous sites defendant employed online and attempt to persuade people that defendant's postings were not true. Phillips noted that these communications increased before union elections involving plaintiff,[2] resulting in him spending at least 12 hours each election dealing with defendant's various statements, which equated with $73,728 for his time. Plaintiff also sought almost $400,000 in attorney fees and approximately $23,500 in costs.

The jury returned a verdict that plaintiff was owed $73,728 for breach-of-contract damages, $391,204.50 for attorney fees, $23,584.49 for costs, and $11,724.41 for prejudgment interest, which totaled $500,241.40.

The day after the jury rendered its verdict, plaintiff moved for specific performance of the 2013 agreement and a permanent injunction. Consistent with the terms of that agreement, plaintiff sought to have defendant remove his various postings from the Internet and transfer ownership of those domain names and social-media accounts containing plaintiff's name or acronym to plaintiff. Apparently unbeknownst to any party, the trial judge at some point that same day signed a judgment against defendant in an amount consistent with the jury's verdict.[3]

On December 1, 2021, the trial court denied plaintiff's motion for specific performance, citing its "lack of jurisdiction" to consider the issue because a final judgment had already been entered. On December 13, 2021, defendant moved for judgment notwithstanding the verdict (JNOV) or, in the alternative, remittitur. Defendant sought to reduce the jury's verdict to $75,000, premised on plaintiff's allegation in its complaint that its damages were no more than $75,000. Defendant alternatively argued that the verdict should be reduced to zero because plaintiff suffered no damage related to the payment of Phillips's salary because plaintiff would have paid Phillips the same amount regardless of any breach of contract by defendant. The trial court denied defendant's motion, stating that everything was "proper" and that the complaint requested damages as allowed by the contract, which included an award of attorney fees and costs.

---

[2] Phillips noted that there had been 128 elections from 2018 through 2021.

[3] The judgment is dated November 24, 2021, but it apparently was not filed in the lower court until November 29.

## II. SUMMARY DISPOSITION OF BREACH-OF-CONTRACT CLAIM

Defendant asserts that the trial court erred by granting plaintiff's motion for summary disposition and denying defendant's motion for summary disposition. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Batista v Office of Retirement Servs*, 338 Mich App 340, 354; 980 NW2d 107 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*. Questions involving statutory interpretation are reviewed de novo. *Home-Owners Inc Co v Perkins*, 328 Mich App 570, 578; 939 NW2d 705 (2019).

### A. ENFORCEABILITY OF 2013 SETTLEMENT AGREEMENT

Defendant first alleges that the trial court erred when it determined that the 2013 settlement agreement was enforceable. Defendant claims that, without his signature on that document, it violates the statute of frauds. We disagree.

MCL 566.132(1)(a) provides:

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:

> (a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement.

The trial court determined that MCL 566.132(1)(a) applied to the 2013 settlement agreement because portions of that agreement were incapable of being performed within one year from the making of the agreement. Plaintiff conceded that the 2013 settlement agreement lacked any signature by defendant or his attorney. Plaintiff instead relied on the signed 2013 stipulated order. That stipulated order enforcing the 2013 settlement agreement contained the electronic signature of the federal district court judge and both parties' attorneys. Thus, we must determine whether defense counsel's signature on this order satisfies the statute of frauds with respect to the underlying, unsigned settlement agreement.

Under the Uniform Electronic Transactions Act, "[i]f a law requires a signature, an electronic signature satisfies the law." MCL 450.837(4). "Electronic signature" is defined as "an electronic sound, symbol, or process *attached to or logically associated with a record* and executed or adopted by a person with the intent to sign the record." MCL 450.832(h) (emphasis added). The trial court did not err when it determined that the signatures on the stipulated order satisfied the statute of frauds with respect to the 2013 settlement agreement. The first sentence of the order

provides that the parties had "entered into a Settlement Agreement resolving this matter." In turn, the 2013 settlement agreement refers to an accompanying "Stipulated Order Enforcing Agreement." Accordingly, it was reasonable to conclude that the stipulated order is "logically associated with" the settlement agreement and that one's signature on the order satisfies the statute of frauds with respect to the agreement.

To preclude summary disposition, defendant essentially claimed that the order could be referring to a different settlement agreement and that the agreement attached to plaintiff's complaint was merely a draft that never obtained mutual assent. However, once plaintiff supported its motion for summary disposition, defendant, as the opposing party, had the burden of demonstrating that a disputed fact existed. *Charter Twp of Pittsfield*, 338 Mich App at 449. In opposing plaintiff's motion for summary disposition, defendant never submitted any other document as being the purported "actual" 2013 settlement agreement. And defendant's deposition testimony averring that *he* never signed such a document did not create a factual issue because it was undisputed that no one signed the 2013 settlement agreement. Moreover, because defendant's attorney signed the stipulated order and the order was inexorably related to the agreement, a lack of a signature on the agreement itself was not controlling. An attorney, even if lacking actual authority to settle cases, has apparent authority to settle cases on behalf of his client. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006); *Nelson v Consumers Power Co*, 198 Mich App 82, 89-90; 497 NW2d 205 (1993).

Defendant also submits that the 2013 agreement was not enforceable because it did not comply with MCR 2.507(G) and because his attorney lacked the authority to settle cases pursuant to the *Nelson* decision. Defendant, however, did not preserve these arguments by raising them in the trial court. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Accordingly, these arguments are waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (recognizing that Michigan follows the "raise or waive" rule of appellate review, where a party's failure to timely raise an issue waives review of that issue on appeal). Moreover, we reject defendant's interpretation of *Nelson*. The lack of actual authority of an attorney to settle cases is not dispositive because the attorney nonetheless possesses apparent authority to do so. See *Kloian*, 273 Mich App at 453; *Nelson*, 198 Mich App at 89-90 ("[A] third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting contrary to the client's express instructions."). The trial court did not err in rejecting defendant's challenge premised on the statute of frauds.

## B. TRIAL COURT'S RULING THAT DEFENDANT BREACHED THE ENTIRE 2013 AGREEMENT

Defendant next contends that the trial court erred when it ruled that he had "breached the terms of the 2013 Settlement Agreement," without specifying which particular terms or obligations of the agreement were breached. We disagree.

Defendant cites no authority for his position that a breach of one *term* contained within a contract does not mean that the person breached the *contract* as a whole. Thus, this issue may be deemed abandoned. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008). In any event, defendant's argument that the trial court failed to explain how

he breached the 2013 settlement agreement ignores the content of the trial court's opinion immediately preceding the court's statement that defendant breached the 2013 settlement agreement. There, the court identified two provisions that were breached: (1) the paragraph precluding defendant from using plaintiff's trademarks, and (2) the paragraph requiring defendant to remove websites under his control containing plaintiff's name or acronym. The court then cited the evidence, including defendant's admissions, showing that he had failed to comply with both of those promises. Viewed in context, it is clear from the trial court's opinion that it found that defendant did not comply with these provisions.

## C. 2013 AGREEMENT AS VIOLATIVE OF FIRST AMENDMENT PRINCIPLES

Defendant also submits that the trial court erred by granting summary disposition in favor of plaintiff because the 2013 settlement agreement is violative of the First Amendment as an unconstitutional prior restraint on speech. Because defendant raised this issue below only in context of plaintiff's claims related to the 2016 settlement agreement, this issue is not preserved, and we may decline to address it. See *Walters*, 481 Mich at 387.

Regardless, it is clear that defendant's argument has no merit. He claims that the prohibition against him using plaintiff's name or acronym is an illegal prior restraint that infringes on his free-speech rights. "The term 'prior restraint' is used to describe an administrative or judicial order that forbids certain communications in advance of the time that the communications are to occur." *Van Buren Twp v Garter Belt Inc*, 258 Mich App 594, 622-623; 673 NW2d 111 (2003), citing *Alexander v United States*, 509 US 544, 550; 113 S Ct 2766; 125 L Ed 2d 441 (1993). Defendant recognizes that prior restraints relate to judicial orders and contends that the 2013 stipulated order violates this principle. However, an agreement to settle pending litigation constitutes a contract. *Clark v Progressive Ins Co*, 309 Mich App 387, 394; 872 NW2d 730 (2015). Defendant ignores the related settlement agreement, a private contract agreed to by the parties. *Id*. In light of the stipulated order to settle, the federal district court did not reach the merits of the parties' dispute, but, through the stipulated order, allowed the parties to resolve the agreement in accordance with specified terms. Although these are related documents, they are separate. Thus, defendant has failed to show how the 2013 settlement agreement, reached between the parties as a private contract, would qualify as a prior-restraint "judicial order." See also *Truckor v Erie Twp*, 283 Mich App 154, 166; 771 NW2d 1 (2009) ("[T]he First Amendment prevents the *government* from suppressing speech . . . .") (emphasis added).

Additionally, by agreeing to enter into the stipulated order and the settlement agreement, defendant waived any contention that his rights were being violated. "A waiver is an intentional relinquishment or abandonment of a known right." *Nexteer Auto Corp v Mando America Corp*, 314 Mich App 391, 395; 886 NW2d 906 (2016). Constitutional rights, just like other rights, can be waived. *AFT Mich v Michigan*, 497 Mich 197, 225; 866 NW2d 782 (2015); *Whispering Pines AFC, Home, Inc v Dep't of Treasury*, 212 Mich App 545, 550; 538 NW2d 452 (1995). The language in both the 2013 stipulated order and the 2013 settlement agreement is clear—defendant was to refrain from using plaintiff's trademarks, including but not limited to plaintiff's name and acronym, and he was to remove all websites under his control containing plaintiff's name or acronym. Because the language in the stipulated order, which was incorporated into the agreement, was clear, the waiver was effectual. See *Nexteer*, 314 Mich App at 395-396. Accordingly, the trial court properly granted summary disposition in favor of plaintiff.

### III. SANCTION FOR MISSING SETTLEMENT CONFERENCE

Defendant alleges that the trial court erred by imposing a $5,000 sanction for his failure to personally attend the settlement conference. We disagree.

We review a trial court's exercise of its inherent power to sanction a litigant for a clear abuse of discretion. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). A court abuses its discretion when it selects an outcome that falls outside the range of principled, i.e., reasonable, outcomes. *Id*.

Before trial, the parties were ordered to attend a settlement conference. The notice stated that the conference was scheduled for 2:00 p.m. on November 17, 2021. The bottom of the notice also contained the following statement:

> **IF YOU ARE SCHEDULED FOR A VIRTUAL HEARING**
> VISIT  HTTPS://WWW.OAKGOV.COM/COURTS/ZOOM  FOR  MORE  INFO
> ZOOM MEETING ID: 2488587954

Defendant, who was in New York, and his counsel in Michigan did not appear in court at the prescribed time and instead were purportedly in the Zoom waiting room before the scheduled conference. When counsel realized that the conference was in person, he drove to court and arrived before 3:00 p.m. Counsel explained that he and defendant thought that the conference was to be held virtually. The trial court rejected counsel's reliance on the notice because it clearly stated that any Zoom information was only pertinent "if" the conference was scheduled for a virtual hearing, which it was not. The court consequently imposed sanctions on defendant in the amount of $5,000, to be paid to the court.

Defendant submits that the imposition of the $5,000 sanction is erroneous because the amount is excessive or disproportionate to the misconduct. While $5,000 is not a trivial amount of money, there is nothing in the record to show that it was an unprincipled amount. On appeal, defendant relies on "anecdotal information" that the amount of the sanction was "out of line with other cases of sanctions for the failure to appear at a settlement conference." Defendant failed to submit documentary evidence in the lower court record that this sanction was out of the ordinary in light of the nature of the violation. *Maxwell v Dep't of Environmental Quality*, 264 Mich App 567, 575; 692 NW2d 68 (2004). We therefore deem the argument abandoned. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").[4]

---

[4] We also note that this was the third sanction imposed by the trial court against defendant. The trial court imposed a sanction of $1,500 pertaining to defendant's failure to participate in a deposition. Additionally, the trial court imposed $3,000 in sanctions for defendant's post of disparaging remarks about plaintiff on his website and the failure to remove them. In light of the need to impose sanctions for prior violations, the trial court's graduated increase in the amount of sanctions to $5,000 did not constitute an abuse of discretion. *Maldonado*, 476 Mich at 388.

Defendant further submits that the trial court held a civil contempt proceeding and did not comply with the procedures of MCR 3.606. We disagree.

"This Court has repeatedly recognized that a trial court has inherent authority to impose sanctions on the basis of the misconduct of a party or an attorney." *Persichini v William Beaumont Hosp*, 238 Mich App 626, 639; 607 NW2d 100 (1999). "This power is not governed so much by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Maldonado*, 476 Mich at 376. Our Supreme Court has "recognized the inherent power of a court to control the movement of cases on its docket by a variety of sanctions," *Banta v Serban*, 370 Mich 367, 368; 121 NW2d 854 (1963), including the dismissal of an action, *Maldonado*, 476 Mich at 389.

In *Persichini*, the plaintiff's attorney caused a mistrial by asking a plainly inappropriate question. The trial court granted a mistrial and ordered the plaintiff's counsel to pay "mistrial sanctions," which consisted of attorney fees, lost income to defendants, and reimbursement for the cost of flying a witness from Boston. *Persichini*, 238 Mich App at 631. This Court held that within a court's inherent authority to sanction misconduct affecting the movement of cases is "the power to award attorney fees as sanctions." *Id*. at 640-641. This Court reasoned that "[t]he ability to impose such sanctions serves the dual purpose of deterring flagrant misbehavior, particularly where the offending party may have deliberately provoked a mistrial, and compensating the innocent party for the attorney fees incurred during the mistrial." *Id*. at 641. But the Court disallowed the sanctions involving lost income and travel expenses, stating that those were not "a traditional sanction for party misconduct." *Id*. at 643.

In the instant case, defendant's conduct implicated the "movement of cases" on the trial court's docket by failing to appear at the settlement conference when instructed to do so. With defendant not appearing, the proceeding unnecessarily took up the court's time when it could have been addressing other matters on its docket, not to mention needlessly also taking up plaintiff's time. Additionally, there is little practical difference between sanctioning a party by having it pay attorney fees and sanctioning a party by having it pay a fine—in both instances the offending party suffers a negative financial consequence by being compelled to pay money. Therefore, the imposition of a fine through the exercise of the trial court's inherent authority was permissible because fines are a traditional sanction for misconduct. *Maldonado*, 476 Mich at 389; *Persichini*, 238 Mich App at 639.

## IV. ADMISSIBILITY OF EVIDENCE

Defendant contends that the trial court abused its discretion by excluding evidence he wanted admitted and by admitting certain evidence offered by plaintiff. We disagree.

This Court reviews preserved evidentiary issues for an abuse of discretion. *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018). A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Id*.

## A. PLAINTIFF'S EVIDENCE

Defendant submits that the trial court erred by admitting his Internet postings into evidence. He claims that the postings should have been excluded under MRE 403, as unfairly prejudicial. We disagree.

MRE 403 states that evidence, "[a]lthough relevant, . . . may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." All evidence is prejudicial to some extent. *Waknin v Chamberlain*, 467 Mich 329, 334; 653 NW2d 176 (2002). MRE 403 only concerns itself with *unfairly* prejudicial evidence, and only then when the unfairly prejudicial effect of the evidence substantially outweighs its probative value. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Dep't of Transp v Haggerty Corridor Partners Ltd Partnership*, 473 Mich 124, 157; 700 NW2d 380 (2005) (quotation marks and citation omitted).

Defendant submits that the trial court should have redacted the posts to allow the jury to see the use of plaintiff's name and acronym by defendant and removed any other content accompanying these posts. In opening statement, however, defense counsel admitted that defendant breached the contract. Despite this admission, he submitted that plaintiff did not suffer any damages by simply addressing plaintiff's name and acronym in online posts.[5] The content of the posts was used, not to relitigate the trial court's determination that a breach of contract occurred or to inflame the jury, but to justify plaintiff's request for damages. Specifically, the content of the posts, disparaging plaintiff's members or insinuating criminal activity, demonstrated why plaintiff devoted resources to monitor its name, initials, and trademark and the impact it would have on membership. Indeed, the jury's review of defendant's actual postings was crucial to determine if plaintiff suffered any damages. Accordingly, the trial court did not abuse its discretion by declining to admit the evidence with all content in the messages redacted except for plaintiff's name and acronym.

## B. DEFENDANT'S EVIDENCE

Defendant also contends that the trial court erred by excluding evidence he sought to introduce, purportedly as relevant to challenge the veracity of plaintiff's witnesses. But, in order to preserve the issue of admissibility of evidence for appeal, the advocate for admission of evidence excluded by the trial court must make an offer of proof unless the evidence is apparent from the context of the questions asked. MRE 103(a)(2); *City of Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 291; 730 NW2d 253 (2006). The offer of proof serves the purpose of informing the trial court of the nature and purpose of the evidence sought to be admitted and to provide a record for the appellate court to determine whether the trial court's ruling should be

---

[5] Defense counsel asserted, "We haven't disputed that from the very first deposition in this case. The issue in this case is and always will be damages. What damages did the . . . plaintiff suffer by [defendant] simply uttering five letters and five separate words. That being SPFPA. And we, as we sit here today, do not believe they suffered any damages."

sustained. *Id*. When the advocate fails to make an offer of proof regarding the substance of the testimony alleged to have been improperly excluded, the issue is not preserved for appellate review. *Id*. at 291-292. And, in the absence of an offer of proof, this Court is unable to determine whether the trial court erroneously excluded testimony that would have affected a party's substantial rights. *Id*.; see also MRE 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). Additionally, an appellant may not simply announce a position as error, leave it to the appellate court to discover and unravel the basis of his claims, and then search for caselaw to sustain or reject his position. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). "The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Id*.

In the present case, defendant merely cited to trial transcript pages and MRE 401 and 403. Defendant failed to identify the evidence sought to be admitted, did not preserve an offer of proof in the trial court, and failed to address whether the evidence was governed by the trial court's rulings on the motions in limine. Because defendant announced his position and failed to conduct an analysis of the specific evidence excluded, he failed to demonstrate entitlement to appellate relief.

## V. MOTION FOR JNOV

Defendant also argues that the trial court erred by denying his motion for JNOV or remittitur. We disagree.

"This Court reviews a trial court's decision to deny a motion for remittitur for an abuse of discretion." *Diamond v Witherspoon*, 265 Mich App 673, 692; 696 NW2d 770 (2005). A trial court's decision on a motion for JNOV is reviewed de novo. *Abke v Vandenberg*, 239 Mich App 359, 361; 608 NW2d 73 (2000). Questions of law, such as whether the trial court complied with a court rule, also are reviewed de novo. See *Haliw v City of Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005); *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 258; 739 NW2d 121 (2007).

In *Pontiac Sch Dis v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 612; 563 NW2d 693 (1997), this Court explained:

> A motion for JNOV should be granted only when there was insufficient evidence presented to create an issue for the jury. When deciding a motion for JNOV, the trial court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party and determine whether the facts presented preclude judgment for the nonmoving party as a matter of law. If the evidence is such that reasonable people could differ, the question is for the jury and JNOV is improper. [Citation omitted.]

"In determining a motion for remittitur, the trial court must decide whether the jury award was supported by the evidence." *Henry v Detroit*, 234 Mich App 405, 415; 594 NW2d 107 (1999). "Remittitur is justified when a jury verdict exceeds the highest amount the evidence will support." *Diamond*, 265 Mich App at 694.

Defendant first claims that the total amount of damages should have been limited to $75,000 because plaintiff in its complaint purportedly set that limitation. Related to plaintiff's Count I, which pertained to the breach of the 2013 settlement agreement, the complaint stated, in pertinent part:

> 8. The parties agree that if a party must seek enforcement of this Settlement Agreement and/or the Stipulated Order Enforcing Agreement, among any other damages that it may prove, that party if successful shall be entitled to its costs and attorney fees.

> * * *

> WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendant for an amount in excess of $25,000, but less than $75,000, *and* award Plaintiff all costs and attorney fees and such other relief that this Court deems just. [Emphasis added.]

Defendant asserts that this "wherefore" clause limited the amount plaintiff could recover to no more than $75,000. When attorney fees are allowed by contract, those fees are part of the normal contractual damages, and not considered "special damages," *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). However, that principle is not dispositive of this issue. While plaintiff's complaint technically should have referenced the attorney fees as part of its "damages," complaints must be read as a whole and a party's choice of labels is not controlling. *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 275; 951 NW2d 731 (2019). Plaintiff's complaint clearly informed defendant that it was seeking damages "and" attorney fees. See *City of Auburn v Brown*, 60 Mich App 258, 263; 230 NW2d 385 (1975) ("The purpose of the complaint and the primary function of all pleadings is to give notice of the nature of the claim sufficient to permit the opposite party to take a responsive position."). Further, the authority for seeking the attorney fees was also referenced in the complaint as the 2013 contract itself. Thus, a plain reading of the complaint shows that plaintiff was seeking an amount of damages exclusive of attorney fees of less than $75,000 *and* an undetermined amount of attorney fees.

Defendant's reliance on *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211; 884 NW2d 238 (2016), is misplaced. In *Hodge*, the plaintiff filed suit in district court and alleged damages "not in excess of $25,000." *Id*. at 214. The Supreme Court held that even though proofs were adduced at trial exceeding $25,000, that did not divest the district court of jurisdiction.[6] *Id*. at 223-234. The Court affirmed the reduction of damages to $25,000 because, jurisdictionally, that is all the district court could award. See *id*. at 217 ("The district court, therefore, may not award damages in excess of [the statutorily imposed $25,000] amount."). The Court's statement that the plaintiff's "prayer for relief controls" was in relation to "determining the amount in controversy and the limit of awardable damages" for jurisdictional purposes. *Id*. at 224. Because plaintiff in

---

[6] Although circuit courts have general jurisdiction, MCL 600.8301(1) provides that district courts have exclusive jurisdiction in civil cases when the amount of controversy does not exceed $25,000. *Hodge*, 499 Mich at 216.

this case alleged damages in excess of $25,000, the trial court's jurisdiction is not implicated here, and *Hodge* is not controlling.

Defendant contends that he would have removed the case to federal court on diversity grounds if he had known that plaintiff was seeking damages in excess of $75,000. In light of the allegations in the complaint, defendant's argument lacks merit. First, as explained, a reading of the complaint should have made defendant aware that the damages sought could exceed $75,000 because plaintiff had requested damages up to $75,000, *and* an award of all costs and attorney fees. Second, it is dubious that any attempt to remove would have been successful. In order for federal district courts to have jurisdiction over a case, in addition to the amount in controversy exceeding $75,000, there must be "complete diversity such that no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v Centimark Corp*, 596 F3d 354, 355 (CA 6, 2010), citing 28 USC 1332. But unincorporated entities, like plaintiff, have citizenship in every state where a member has citizenship. *Americold Realty Trust v Conagra Foods, Inc*, 577 US 378, 381; 136 S Ct 1012; 194 L Ed 2d 71 (2016); *United Steelworkers of America, AFL-CIO v R H Bouligny, Inc*, 382 US 145; 86 S Ct 272; 15 L Ed 2d 217 (1965). Thus, with defendant being a citizen of New York, if plaintiff had any members that also were citizens of New York, then there would be a lack of complete diversity. Plaintiff noted in the trial court that it has a local union on Long Island, New York. Regardless, whether defendant would have been successful in removing the case is not controlling, but it undermines his argument that he was deprived of the opportunity to remove the case.

Defendant also contends that plaintiff could not recover the salary it paid to Phillips in connection with the time he spent rebutting defendant's claims regarding plaintiff. "Damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Farm Credit Servs of Mich's Heartland, PCA v Weldon*, 232 Mich App 662, 678; 591 NW2d 438 (1998). The goal is to place a plaintiff in a position that it would have been had the defendant not breached the contract. *Corl v Huron Castings, Inc*, 450 Mich 620, 625 n 7; 544 NW2d 278 (1996); *Harbor Land Co v Grosse Ile Twp*, 22 Mich App 192, 208; 177 NW2d 176 (1970).

At trial, plaintiff only sought damages, exclusive of attorney fees, for the money it paid Phillips for the time he spent responding to defendant's claims regarding plaintiff. Defendant asserts that because plaintiff was going to pay Phillips this money regardless, it is not compensable as damages. Indeed, Phillips testified that he was a salaried employee, and as a salaried employee, he would have been paid the same amount by plaintiff regardless of what tasks he undertook. But this is not a simple math exercise. Plaintiff paid Phillips for 128 hours of his time expressly responding and countering defendant's salacious statements about plaintiff. If defendant had not breached the contract, i.e., never used plaintiff's name or acronym, then Phillips could have used those 128 hours for some other purpose benefiting plaintiff. Thus, although plaintiff's salary expenditure was unaffected by defendant's breach of the contract,[7] its employee, Phillips, was

---

[7] We make this observation from the evidence presented at trial. To the extent that plaintiff may have suffered other damages related to defendant's statements, such as loss of goodwill or

devoted to this area of work when he could have been utilized elsewhere. In other words, plaintiff was deprived of using Phillips for any other purpose for those 128 hours. Accordingly, under the facts of this case, we conclude that it was permissible for plaintiff to seek the costs plaintiff incurred for having its employee respond to defendant's various postings.

For the foregoing reasons, the trial court did not err when it denied defendant's motion for JNOV, and it did not abuse its discretion by denying defendant's motion for remittitur.

Defendant also argues that the trial court's ruling was inadequate because it failed to comply with the mandates of MCR 2.610(B)(3), which provides that when ruling on a motion for JNOV, "the court must give a concise statement of the reasons for the ruling, either in a signed order or opinion filed in the action, or on the record." This issue is moot because our own de novo review on the matter makes the trial court's rulings fairly inconsequential. See *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 284; 602 NW2d 854 (1999) (stating that despite the trial court's apparent failure to engage in the appropriate analysis for the question of whether JNOV was warranted, this Court's review of that issue was not impeded).

VI. SPECIFIC PERFORMANCE

Plaintiff argues on cross-appeal that the trial court erred by failing to grant it the equitable remedy of specific performance. We agree. With specific performance being an equitable action, this Court reviews the trial court's ultimate determination de novo and its findings of fact for clear error. *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995); see also *Stachnik v Winkel*, 394 Mich 375, 383; 230 NW2d 529 (1975).

In its complaint, plaintiff sought monetary damages in Count I, and sought specific performance in Count III for defendant's breach of the 2013 settlement agreement. In its motion for summary disposition, plaintiff argued that there was no genuine issue of material fact that defendant had breached the agreement and that it was entitled to specific performance of the agreement, as well as money damages. The trial court agreed that there was no genuine issue of material fact regarding defendant's breach of the agreement and granted summary disposition on that claim. However, the court limited that grant of summary disposition to Count I. For Count III, the trial court ruled that claim should be dismissed because specific performance is a remedy, not an independent cause of action. The court added, however, that this ruling did not preclude plaintiff "from seeking the remedy of specific performance on its breach of contract claims as provided by law."

The trial court erred by failing to address and grant the request for specific performance. Although caselaw is inconsistent whether specific performance is an independent cause of action,[8]

---

reputation or loss of members, it did not seek and therefore did not present any evidence of damages regarding anything other than Phillips's time.

[8] Several cases reference specific performance as being a "cause of action." See, e.g., *Shepherd & Shepherd v Deitz*, 392 Mich 754 (1974) (ordering no cause of action on the claim for specific performance, but not because it was not a recognized claim); *Steward v Panek*, 251 Mich App 546,

that principle is not controlling. Assuming the trial court is correct that specific performance is not an independent cause of action, that did not preclude plaintiff from obtaining this remedy. In *Farish v Dep't of Talent & Economic Dev*, 336 Mich App 433, 438 n 2; 971 NW2d 1 (2021), this Court stated that although the plaintiffs' "claim" for equitable relief was properly dismissed because it was not a cause of action, the plaintiffs nonetheless were not "foreclosed from an equitable remedy if entitled to such relief under a different cause of action." Thus, although plaintiff in the present case did not possess an independent cause of action for specific performance, it simultaneously alleged a claim for breach of contract. And not only did it allege such a claim for breach of contract, but the trial court also granted summary disposition in plaintiff's favor, ruling that there was no genuine issue of material fact that defendant had breached the contract.

We also note that the fact a plaintiff seeking "both equitable relief in the form of specific performance and legal relief in the form of damages [does not] deprive [it] of [its'] right to a ruling by the trial court regarding [its'] request for specific performance." *Zurcher v Herveat*, 238 Mich App 267, 297; 605 NW2d 329 (1999). Where there are both legal and equitable claims and there is a request for a jury trial, the equitable claim is to be decided by the court, while the legal claim is to be decided by a jury. *Gelman Sciences, Inc v Fireman's Fund Ins Cos*, 183 Mich App 445, 450; 455 NW2d 328 (1990); *Dutka v Sinai Hosp of Detroit*, 143 Mich App 170, 173; 371 NW2d 901 (1985). Therefore, the trial court should have considered plaintiff's request for equitable relief.[9]

While we could remand to the trial court for it to initially consider plaintiff's request for specific performance, we elect instead to resolve the issue here. Because a determination whether

---

550; 652 NW2d 232 (2002) (reversing dismissal of "claim for specific performance"). However, we are aware that these cases did not directly address whether specific performance is a valid independent claim, and assumed points of law in an opinion are not authoritative. *Webster v Fall*, 266 US 507, 511; 45 S Ct 148; 69 L Ed 411 (1925). On the other hand, it is understood that equitable relief is a remedy and not a cause of action. *Farish v Dep't of Talent & Economic Development*, 336 Mich App 433, 438 n 2; 971 NW2d 1 (2021); see also *Henry v Dow Chemical Co*, 473 Mich 63, 96-97; 701 NW2d 684 (2005) (" 'It is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy.' ") (citation omitted). Given that specific performance is an equitable remedy, *Edidin v Detroit Economic Growth Corp*, 134 Mich App 655, 660; 352 NW2d 288 (1984), we agree with the trial court that it does not constitute an independent cause of action. But as explained, that does not preclude plaintiff from obtaining this remedy.

[9] Another reason why the trial court should have considered the request for equitable relief is that "the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). And in this case, when reading plaintiff's complaint as a whole, it is abundantly clear that plaintiff was alleging a single claim of breach of contract for defendant's breach of the 2013 settlement agreement and that plaintiff was seeking both monetary damages and specific performance. The fact that it labeled the two requests as separate counts is not dispositive. See *id*.

-14-

specific performance is warranted is reviewed de novo on appeal, there is no impediment to us resolving the issue in the first place. See *Badalamenti*, 237 Mich App at 284.

"Specific performance of an agreement may be an appropriate remedy where enforcement of the promise is necessary to avoid injustice." *Thermatool Corp v Borzym*, 227 Mich App 366, 375; 575 NW2d 334 (1998). The peculiar circumstances of each case are considered when deeming if justice requires specific performance. *Edidin v Detroit Economic Growth Corp*, 134 Mich App 655, 660; 352 NW2d 288 (1984). Notably, a party is not precluded from seeking and recovering both monetary damages and equitable specific performance. *Reinink v Van Loozenoord*, 370 Mich 121, 127; 121 NW2d 689 (1963); *Giannetti v Cornillie (On Remand)*, 209 Mich App 96, 98; 530 NW2d 121 (1995). But specific performance is not warranted when there is an adequate remedy at law. *Edidin*, 134 Mich App at 660.

In this case, the evidence at the summary-disposition phase showed that defendant made countless different publications or postings online that directly referenced plaintiff or its acronym, in violation of the 2013 settlement agreement. Part of that agreement also required defendant to "immediately" transfer to plaintiff "ownership of all domain names or social medial accounts" in his control that contain plaintiff's trademarks, including its name or acronym. Defendant further agreed to "[r]emove all websites under his control containing Plaintiff's name or acronym in the domain name or within the website materials from the internet." Thus, it is clear that monetary damages would not be an adequate remedy under the circumstances of this case. Even if defendant were to cease making new postings using plaintiff's trademarks and plaintiff were to recover monetary damages, defendant's domains and prior postings would still be online, available, and visible to the entire world. Part of the 2013 agreement was to ensure that these sites would no longer exist. Accordingly, enforcing these promises is necessary to avoid injustice, and the trial court erred when it failed to order specific performance.

In sum, the gravamen of plaintiff's complaint was an action for breach of contract seeking both monetary damages and specific performance. After the trial court determined that there was no genuine issue of fact that defendant breached the 2013 agreement, it should have considered the request for specific performance. And because the circumstances of this case required specific performance, the court should have granted the request. We therefore remand to the trial court for entry of a judgment granting specific performance.[10]

---

[10] Because we conclude that specific performance was warranted once summary disposition was granted in favor of plaintiff, it is unnecessary to address plaintiff's argument that the trial court erred by failing to address its posttrial motion for specific performance.

We reject defendant's challenges raised in his appeal and affirm the trial court's judgment. With regard to specific performance challenged on cross-appeal, we remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, having prevailed, may tax costs. MCR 7.219(A).


/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Anica Letica